# DECISIONS

## OF THE

# COURT OF APPEALS OF KENTUCKY

## SEPTEMBER TERM, 1912

### Hickman County v. Scarborough.

(Decided October 15, 1912.)

Appeal from Hickman Circuit Court.

1. Board of Health—Officers and Agents—Powers and Duties of.—
As often as each case or epidemic of contagious or infectious disease arises, the county board of health must meet and order such treatment and disinfection, as to it seems necessary; and its orders, so made, must be executed by the county health officer. The board of health, when acting within its jurisdiction, can bind the county; the health officer has no such power.

2. Board of Health—Officers and Agents—Compensation of.—The salary and all proper expenses of the health officer of the county board of health, where he proceeds as directed by statute, are enforcible demands against the county. Where the fiscal court fails to fix his compensation, the health officer is entitled to the reasonable value of his services.

3. Board of Health—Evidence—Burden of Proof.—In an action against the county for the expenses of treatment and disinfection of patients, made under the direction of the board of health, where the defense of solvency of such patients is interposed by the county, the burden is upon the county to prove such solvency.

4. Same.—The acts of the county board of health may be proved by parol.

J. D. VIA, J. M. BRUMMAL, JR., for appellant.

SHELBOURNE & SHELTON for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Dr. J. R. Scarborough was the health officer of Hickman County in October 1909; and had held such position

for some time prior thereto. At its October, 1909, term, the fiscal court of Hickman County adopted in due form the following resolution, as appears from the record kept by said court:

"On motion made, seconded and carried, ordered that the health officer of Hickman County be paid $1.50 for each call he may make and 50 cents per mile one way for the distance he shall travel over one mile in making such call, and $2.00 for quarantining and $2.00 for fumigating smallpox, scarlet fever, diphtheria and other infectious disease and it is understood that Dr. J. R. Lee shall act in such capacity in the vicinity of Columbus. This to be effective until the April term, 1910, of this court."

Conceiving that his rights were fixed by said order or resolution, Doctor Scarborough continued to discharge the duties of health officer of Hickman County. Sometime following the April, 1910, term of said court, he presented to it his claim for services rendered the county, during the six months covered by the order. On the advice of the county attorney, the fiscal court declined to pay. He thereafter instituted suit, in which he sought to recover of the county $324.00, the value of the services alleged to have been rendered by him as health officer from October, 1909, to April, 1910. Several defenses were interposed for the fiscal court and the county by the county attorney, the chief of which was: That the health officer was not ordered or directed by the county board of health, or the State Board of Health, to render the service for which he sought to hold the county liable and that, in rendering this service, he acted as a volunteer, on his own initiative, and the county was, in no wise, responsible therefor. In an amended petition, plaintiff pleaded that he rendered this service under the direction of the county board of health and the regulations of the State Board of Health. This amended petition was traversed. Another defense, interposed in behalf of the county, was that the persons, to whom this service was alleged to have been rendered, were financially able to pay the bills, and that therefore the county was not chargeable therewith. Upon the issues thus joined the case was submitted to a jury for trial, and it having returned a verdict in favor of plaintiff for the amount sued for, the county appeals.

On the question of the financial condition of the patients treated by appellee, for the services to whom he sought to hold the county liable, the burden was upon the county; the proof failed to support the allegations in the answer, that these parties, or any of them, were financially able to meet the expense themselves; and hence, if the service was in fact rendered by appellee in his official capacity as health officer of the county and while he was proceeding as directed by the statute, the county should be required to pay the contract price, if the order adopted by the fiscal court, and upon which appellee relies, is a valid and binding contract; or, if this order is invalid, then the county should be required to pay appellee for such service, its reasonable value. Section 2055, Kentucky Statutes, makes it the duty of the fiscal court to fix the compensation of the health officer, by allowing to him a salary. The evident purpose and object of the legislature, in passing this act, was to prevent controversies between the health officer and the fiscal court, growing out of questions of this character. But, as it is the plain duty of the county to meet the legitimate and proper expenses of the health officer, when he proceeds in the way and manner as by statute directed, the failure of the fiscal court, in advance of the service rendered, to fix a salary as compensation for the health officer, could not have the effect of defeating him in his effort to collect for such service, the reasonable value thereof. Butler County v. Gardner, 29 Rep., 922. So, it becomes unnecessary to enter into a consideration of the validity of the order adopted by the fiscal court, at its October, 1909, session. If the order was not binding upon the county, then no salary or compensation was fixed for his services during the ensuing six months, and if he rendered any services, he would be entitled to a reasonable charge against the county for the value thereof. There is no complaint that the schedule of fees, adopted by the fiscal court in said order, is not reasonable; and, as the evidence shows that the services charged for were rendered and the charge fixed acording to the schedule adopted in the order of the fiscal court, if appellee is entitled to anything, he is entitled to the amount sued for.

The serious question presented by the record is: Did the health officer act upon the direction of the county

board of health, or was he acting upon his own initiative? Upon this point, he testifies as follows:

"Q. Doctor I will ask you one other question: Tell the jury when you made these charges—when you gave this attention as health officer, how you come to do it?"

"A. In the beginning the fiscal court employed me as health officer to do this work as per contract, I accepted it and as cases demanded through the county, we had no epidemic at all, that is, what we call an epidemic, we had sporadic cases, just here and there through the county, as cases were reported to me by the different doctors over the county, I attended those cases, carried out what we thought were the rules and regulations of the State Board of Health and of our board of health."

"Q. Didn't you go to Spring Hill, Columbus, and various parts of the county on notifications of these various doctors, wouldn't you get in your buggy and go and the board of health didn't know anything about it at all?"

"A. I told you that I didn't go a single time by a direct order from the county board of health."

"Q. I mean any kind of an order, didn't you go without any kind of an order?"

"A. Never did but one time, that was by order of Judge Brummel, you remember that time I met you over here."

"Q. Did the county board have a meeting?"

"A. No, we had several meetings, they knew what I was doing all the time, there was no special, direct order in any of these cases, there was no special, direct order from the county board of health, where we met and kept minutes, but we would meet, and not knowing, and not believing yet that minutes were absolutely necessary to be kept, it was absolutely impossible to have a meeting every time and the thing was to do it right now that the orders of the board of health might be carried out; you may take it for granted that in not one of these cases did we meet and have these things ordered carried out, not in regular session where minutes were kept but we did meet."

The chairman of the county board of health, Dr. W. W. Richmond, upon the same point testifies:

"Q. What direction or instruction did the local board of health of Hickman County give the health officer

during this period here from October, 1909, to April, 1910, with regard to his duties?"

"A. He was directed as health officer of Hickman County to look after all contagious diseases, infectious diseases, to quarantine and fumigate and to report the same to the local board here where in his opinion he deemed it necessary, that is the sum and substance of it."

"Q. Tell the jury whether or not for the various items charged for here if the local board of health met and ordered Dr. Scarborough to go out and quarantine and fumigate these cases?"

"A. Not specifically, not individually, the law don't require that."

Dr. E. B. McMorries, a member of the county board of health, says upon this point:

"Q. During that time that you was a member of that board of health in connection with the chairman, Dr. Richmond and Dr. Scarborough, if you gave any direction with reference to the treatment of these contagious diseases, you may tell the jury what it was?"

"A. We would occasionally meet on the street, the three of us, and Dr. Scarborough would report his action in regard to quarantining these cases and where they were located, sometimes, most all the time I think, but as far as any minutes being kept of the meetings, I don't think there were any."

"Q. Tell the jury whether or not you all met and ordered a quarantine and fumigation of various people on this account of Dr. Scarborough's and ordered him to go do this work?"

"A. I can't say that we did specifically, but we gave him a general order and it was understood that he was to do this."

Thus, the uncontradicted evidence of appellee himself, as well as that of the chairman and another member of the county board of health, shows that a blanket instruction had been given appellee, to look after the sanitary and health conditions of the county and to take such steps as, in his judgment, were necessary to prevent the spread of contagious and infectious diseases. The record does not show just when this blanket instruction was given. There is no evidence that the record, kept by the county board, shows that such an instruction was given; but, it is unnecessary that there should be a record to this effect. If, in fact, the county board passed such

an order, it may be proven by parol, as was held in Taylor v. Adair County, 119 Ky., 374. There is no showing that, at the time this general authority was given, there was prevalent in the county any contagious diseases. Indeed, it appears satisfactorily from the evidence that, during the period covered by this litigation, there was no epidemic of any disease of a contagious character in the county. The services rendered by appellee were two insolated cases. He acquired his knowledge of their existence, usually in this way; the physician, in attendance, would call him up by telephone, or otherwise notify him, that there was, at a certain place, a patient apparently suffering from a contagious disease. Appellee would thereupon visit the patient and, if his diagnosis of the case led him to believe that his informant was correct, he would take the steps proper and necessary to prevent the spread of the disease. When he would thereafter meet members of the county board, he would tell of the way and manner in which he was discharging the duties of his office. On one or two occasions, he met as many as two members of the county board of health, physicians, and discussed with them, certain cases which were then being treated by him, and was advised that he was proceeding with the work to the satisfaction of the board. There is no evidence whatever that the board was ever called to meet, during the time for which the recovery is here sought. It held no regular session during said time. It held no called meeting, and any discussion of the conduct of the office by appellee was only such as would be had at an occasional meeting between appellee and two of the physicians, as they would meet upon the street corner, or elsewhere casually, or by accident as it were. It is apparent from the testimony of the chairman of the board of health, that he regarded the law as fully complied with by issuing to the health officer a general instruction to go ahead and look after the sanitary and health conditions of the county; and hence, he did not deem it necessary to call a meeting of the board to give explicit directions concerning any particular case; and this undoubtedly is the reason why the board did not meet and take action upon the several cases, which were treated and looked after by appellee. The county board entrusted to appellee the discharge of the duties which were, by section 2055 Kentucky Statutes, imposed upon it.

The county board can, when acting within the jurisdiction conferred upon it by statute, bind the county (City of Bardstown v. Nelson County, 25 Rep., 1478), but the health officer, has no such power. He is a mere ministerial officer, a creature of the board, charged and entrusted with the duty of carrying out its orders. His duties are defined and fixed by statute, and it is only when he acts under the order and direction of the county board, that the county is responsible for expenses incurred or made by him. Not only so, but he must have the authority, in each case, in advance of any action on his part looking toward establishing a quarantine, or doing any other act for which a claim is to be made against the county, as was expressly held in Taylor v. Adair County, 119 Ky., 374; where this court said:

"It is to the county board of health, not to the health officer, their creature and executive, that is committed the duty of examining into those nuisances and conditions of filth and infection that tend to spread the contagious diseases, to establish quarantines, and to bring the population of an infected or suspected community into prescribed treatment and disinfection. This power is given by the statute to the board, and it must act as a board on, each case or epidemic as it arises; determining the necessities of each situation from the facts then existing."

The proof shows there was no attempt made by the health officer to procure the consent, or even the advice, of the county board of health before acting. On the contrary, it is apparent that the county board was leaving to the health officer the discharge of the duties, which the law imposed upon it; that, in all that he did, he acted, not upon the judgment of the county board of health, but upon his own judgment; and, as the county could only be bound so as to require it to pay for his services when he was carrying out the order or direction of the county board, it was incumbent upon appellee to show that the services, for which he was seeking compensation, were rendered in conformity to the requirements of the statute, as construed by this court in Taylor v. Adair County, supra. This, he failed to do; but, on the contrary, shows that none of the service was rendered while so acting.

The court should have, upon this showing, directed a verdict for appellant, and for its failure so to do, the judgment is reversed and cause remanded for further

proceedings consistent herewith.   Whole court sitting
Judge Nunn dissenting in part.

### DISSENTING OPINION BY JUDGE NUNN.

Section 2055 of the Kentucky Statutes, as it existed
prior to March 18, 1904, required the State Board of
Health to appoint three discreet citizens, residents of
each county in the State to constitute a local, or county
board of health, and empowered and required the county
board to inaugurate and execute sanitary measures.   The
section did not require that the county board be com-
posed of physicians.   It also required that this board be
paid for such services as it rendered; and closed with
the following language:

"The local board shall appoint a competent physician,
who shall be the health officer of the county, and shall
hold his office for two years, and until his successor is ap-
pointed."

It will thus be seen that no special duty was required
at the hands of this health officer; his only duties were
to act when the local board employed and directed him
to aid them in inaugurating and executing the rules and
orders made by the board of health.

The opinion in the case of Taylor v. Adair County,
27 Ky., L. R. 36, which is referred to in the opinion,
was rendered January 4, 1905, but the services sued for
in that action were rendered prior to March 18, 1904, the
date upon which the section of the statute was amended,
therefore, that opinion was controlled by the section as
it existed prior to March 18, 1904, but this case must be
governed by that section as amended March 18, 1904,
and it was amended on this date in several particulars;
one of them being instead of providing, as the old statute
did, that the State board should appoint three or more
intelligent and discreet citizens in each county to consti-
tute the local board, it provides that the State Board
of Health shall appoint three intelligent and discreet
licensed and practicing physicians   residing   in   each
county, who, together with the county judge and one per-
son selected by the fiscal court of each county, shall con-
stitute the local board of health.   Again, instead of stipu-
lating, as did the section previous to its amendment, that
the local board shall receive such compensation for serv-
ices as the county court in its discretion may allow, it

now says the local board shall receive no compensation for such services, Further, we find the following in the section as amended which was not in it previous thereto, to-wit:

"The local board shall appoint a competent practicing physician who shall be the health officer of the county and secretary of the board, whose duties it shall be to see that the rules and regulations provided for in this act, and the rules and regulations of the State Board of Health are enforced, and who shall hold his office at the pleasure of said board, and he shall receive a salary, the amount of which to be fixed by the fiscal court at the time, or immediately after his election. In no state of case shall said health officer claim or receive from the county any compensation for his services other than the salary fixed by the fiscal court."

This amendment requires the health officer of the county to see that the rules and regulations provided in this act and the rules and regulations of the State Board of Health, are enforced. It does not say that the rules and regulations provided for by the county board of health shall be enforced, but suppose it does mean that the county board should establish rules and regulations; it fails to provide when it shall be done or in what manner. Further, there is nothing in the section indicating that the members of the county board of health are expected to assemble each time there is reported an infectious disease or emergency, and it is highly probable that such a requirement would be destructive of the section. The five persons who constitute the board should be intelligent business and professional men, therefore, will be men engaged in some fruitful vocations, and it does not seem reasonable that they should be required to leave their homes and businesses and assemble at some place in the county each time an infectious disease or an emergency of any kind is reported, for the statute expressly provides that they shall receive no compensation. It seems to me that if the local board meets at the beginning of its health officer's term of office and enacts rules and regulations governing his conduct, the statute is complied with.

The opinion holds that before the health officer can execute the rules and regulations of the State Board of Health, the local board must assemble and order him to do so. If this be so, of what use is the language and

what did the legislature mean when it said by way of amendment, that the local boards shall appoint a competent practicing physician who shall be health officer of the county and secretary of the local board, and "whose duties shall be to see that the rules and regulations provided for in this act, and the rules and regulations of the State Board of Health are enforced," &c. This requires the health officer to carry out the rules and regulations of the State Board of Health and attaches no conditions to the requirement, but the opinion says he cannot carry them out until the local board directs him to do so. Now what would be the position of the health officer if the State Board of Health inaugurated rules and regulations and the local board failed to meet and direct him to carry them out? This is certainly an improper construction of the statutes. The statutes require the State Board of Health to appoint the local boards in the various counties of the State, and then, as construed in the opinion, renders the State Board of Health subservient to the local boards; the agent becomes superior to the principal and can execute its orders or not, as it sees proper. The section as amended enjoins upon the health officer his duties, but the section did not do so before it was amended in March, 1904. The Legislature had the right and power to enact this law and it is the duty of the courts, when occasion requires, to see that it is enforced, whether we approve of the power given the health officer or not.

A considerable portion of appellee's claim was for services rendered in carrying out orders of the State Board of Health, as the testimony shows.

Under the old statute the health officer of a county was a creature of the county board of health and his sole power to act was derived from that board, hence the apparent reasonableness of the construction in the opinion of Taylor v. Adair County, supra; but under the statute as amended the health officer's powers are specifically delegated by the General Assembly. The act says that it is his duty to see that its provisions are carried out and that the rules and regulations of the State Board of Health are enforced, therefore, the opinion in the case referred to has no application.

From these reasons, I dissent from the opinion rendered herein.