## Breckinridge County v. McDonald, et al.

(Decided September 19, 1913).

### Appeal from Breckinridge Circuit Court.

1. Appeal—Claims Against County—Single Appeal.—Where a fiscal court allowed forty-two claims against a county by a "blanket" order, and the county appealed to the circuit court by filing a single copy of the order and issuing a summons against the individual claimants, the circuit court properly treated it as a single appeal, and dismissed the appeal against all persons who had claims for sums not exceeding $25.00, and also properly required the county to elect which one of those claims which were for more than $25.00, it would prosecute.

2. Appeal.—An appeal cannot be prosecuted from a judgment which is not specified in the statement of appeal required by section 739 of the Code of Practice.

3. Appeal—When Parties Not Before Court On.—Parties not named as appellees in the statement of appeal required by section 739 of the Civil Code of Practice, are not before the court upon the appeal.

4. County Health Officer—Board of Health.—The County Health Officer is the executive officer of the County Board of Health; he acts for it to execute its lawful demands in such matters; his duty is that of oversight and direction more than personal execution.

5. County Health Officer—Board of Health.—Under section 2055 of the Kentucky Statutes, it is the duty of the County Health Officer to see that the rules and regulations provided for by law, and the rules and regulations of the State Board of Health, are enforced.

6. County Board of Health—Discretion of.—The power to determine what physicians, nurses, guards and attendants are necessary to carry out the rules and regulations provided by law and by the State Board of Health, is left to the discretion of the County Board of Health; the power to fix the compensation of the person so employed is vested in the fiscal court of the county.

JESSE R. ESKRIDGE for appellant.

MOORMAN & BALL for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Early in March, 1912, smallpox became epidemic in certain portions of Breckinridge County. It was confined principally to Cloverport, Irvington, Tar Fork and Balltown. On March 7, 1912, the Breckinridge County Board of Health met for the purpose of considering the smallpox situation, and to take steps to control it. The State Board of Health sent its representative,

Dr. W. L. Heizer, to examine and report upon the situation, and he suggested a definite program of procedure to control the epidemic and prevent the further spread of the disease. Dr. John E. Kincheloe was the County Health Officer, and upon his recommendation Dr. E. C. McDonald, the appellee in this action, a practicing physician at Cloverport, was employed by the County Board of Health to carry out the recommendations included in the report of Dr. Heizer to the State Board of Health. Dr. Kincheloe was a practicing physician at Hardinsburg, the county seat, while Cloverport was eleven miles distant, and Irvington and Tar Fork were likewise located at points distant from Hardinsburg. Dr. McDonald took charge of the work and carried it out successfully. He presented his bill to the Fiscal Court for fifty-four days service at $10 per day, aggregating $540, which the court allowed. Upon appeal by the county to the circuit court, a retrial was had and Dr. McDonald again recovered a judgment for $540. From that judgment the county prosecutes this appeal.

The circuit judge made the following findings of law and fact:

"The court finds as a matter of law that it was not the duty of the Health Officer of Breckinridge County to administer treatment to the indigent patients suffering with contagious diseases, but, that it was his duty under the statute to take general superintendence of all contageous diseases and institute quarantines and fumigate premises. The court does not think, however, that any person suffering with a contageous disease becomes, as a matter of law, the patient of the Health Officer, but that the County Board of Health had power under the law to employ, and did employ, another physician to administer treatment to indigent patients.

"The court finds as a matter of fact that the account sued on by the county, allowed by the Fiscal Court to Dr. McDonald, was for his services when acting in the character of physician to indigent patients suffering with smallpox, and that the amount of his charges are rea-sonable."

The proof supports the finding of fact; indeed, the appellant does not deny that the services were rendered, or that the charges therefor were reasonable.

Preliminary to a consideration of the case upon its merits, we will dispose of a question of practice which has been urged upon us in the brief for appellant.

1.   The order of the Fiscal Court which allowed Dr. McDonald's claim was what is called a "blanket" order allowing the claims of forty-two persons ranging from $2 to George Graham, to $540 to Dr. McDonald. The order reads as follows:

"The following smallpox claims were presented to the court, and the court being advised, it was moved and seconded that all claims that were properly itemized and 'O. Kd.' by the Health Officer in charge, be allowed; the vote being taken, said motion carried and was made the order of the court, which claims were as follows, to-wit:

"1.   Claim of J. D. Babbage for public print-
        ing; allowed ....................................................................$21.00"

(Then follow forty-one other claims for different amounts.)

Ten of these claims allowed by the Fiscal Court amounted to more than $25 each; but, in prosecuting the appeal the county attorney filed one copy of the order of the Fiscal Court, and caused a summons to be issued against eight of the claimants whose claims exceeded $25.   Upon motion, the circuit judge dismissed the appeal as to all claims of $25 and less, upon the ground that the circuit court had no jurisdiction thereof; and, upon the motion of the remaining claimants, the circuit judge required the county to elect which of said claims embraced in said order it would try upon the appeal, whereupon the county elected to prosecute its appeal from the allowance of McDonald's claim. Thereupon the circuit judge dismissed without prejudice the appeals from the judgment allowing all the other claims; and to that order the county excepted and prayed an appeal to this court. That order was made on the 16th day of the term—the date of the order not being shown by the record. The appeal, however, is not prosecuted from the order just mentioned, but from the subsequent judgment entered on the 22nd day of October, 1912, which passed upon the merits of Dr. McDonald's claim. The two orders are entirely separate and distinct, and have no relation to each other; the first order above referred to being found on page 6 of the record, while the final judgment appealed from as shown by the statement required by section 739 of the Code of Practice, is found on Page 10 of the record. No appeal having been prosecuted from the order of the circuit judge dismissing the appeals and requiring the county to elect as to which appeal it would

prosecute, that order is not before us and cannot be considered.

Moreover, as those claimants are not named as appellees in the statement of appeal required by section 739, they are not before the court upon this appeal. Brodie v. Parsons, 23 Ky. L. R., 823, 64 S. W., 426, and the cases there cited.

2. Section 2055 of the Kentucky Statutes provides, in part, as follows:

"The local board shall appoint a competent practicing physician who shall be the health officer of the county. and secretary of the board, whose duties shall be to see that the rules and regulations provided for in this act, and the rules and regulations of the State Board of Health are enforced, and who shall hold his office at the pleasure of said board, and he shall receive a salary, the amount of which to be fixed by the fiscal court at the time, or immediately after his election. In no state of case shall said health officer claim or receive from the county any compensation for his services other than the salary fixed by the fiscal court."

By a proper resolution the County Board of Health had fixed the annual salary of Dr. Kincheloe, as County Health Officer and Secretary of the Board, at $75.00.

The county defends upon the theory that McDonald was employed by the County Board of Health to take general charge of the smallpox epidemic and that the services rendered by him constituted the same service that was incumbent upon Dr. Kincheloe, as the regularly elected Health Officer; that it was Dr. Kincheloe's duty to take personal charge of the smallpox epidemic at Cloverport, Irvington, Tar Fork and Balltown, and that neither the County Board of Health nor the Fiscal Court had the right to employ or pay a substitute to do the work of the County Health Officer. It will be noticed that the circuit judge in his findings of fact, concludes that it was not the duty of the County Health Officer to administer treatment to patients suffering with contageous diseases, but that it was his duty only, under the statute, to take general superintendence of all contagious diseases, and to institute quarantine, and fumigate premises; and that the County Board of Health had power, under the law, to employ another physician to personally administer the treatment to patients. The proof further shows that by reason of the character of the disease, and the location of the patients at long distances from

Hardinsburg, and from each other, it was impossible for the County Health Officer to give them the requisite personal attention without abandoning his home and practice. Some of these patients were located as far as seventeen miles or more from Hardinsburg. Dr. Kincheloe not only consulted daily with Dr. McDonald by telephone, but he made three visits to Cloverport by way of supervision, spending the entire day there, on each visit. Dr. McDonald was employed by the Board of Health at its meeting on March 2, 1912, but the minute of that meeting is missing. Shortly thereafter, the guards employed by the Health Officer for the purpose of maintaining the quarantine, having threatened to quit work because they feared they would not get their pay, the Fiscal Court entered the following order on April 2, 1912:

"On motion of Justice G. N. Harris, seconded by B. A. Whittenbill, that guards be employed by the Health Officer at a sum not to exceed $2 per day, and *anything else to stop the spread of the disease.* Motion carried, and is made the order of this court."

Following that order the County Board of Health entered an order on April 12, 1912, which reads, in part, as follows:

"At a special meeting of the Breckinridge County Board of Health called to consider the epidemic of smallpox at Cloverport and vicinity, and in other parts of the county, it is hereby ordered that the recommendations as included in the report of Dr. W. L. Heizer to the State Board of Health be enforced, and that E. C. McDonald, at Cloverport, be authorized as Deputy Health Officer to carry out the said recommendations at Cloverport and vicinity, as follows:

(Then follow six specific instructions as to his duties.)

Under these assurances the guards remained at their posts until the epidemic was finaly stamped out.

It is contended by appellant that the order of the Board of Health above quoted, shows that McDonald acted as a deputy in place of Kincheloe, the regular Health Officer, whose duty it was to attend to these matters in person. The wording of the order, however, is not material under the facts, and in no way changes the real relation of Dr. McDonald to the County Health Officer; and, although McDonald was styled a Deputy Health Officer at Cloverport, he was no more than an

employee at Cloverport, because the regular Heath Officer could not, by reason of the circumstances above pointed out, give his personal attention to the epidemic at that point.

The whole question, therefore, resolves itself into this proposition: Can the County Board of Health employ agents or assistants for the Health Officer for the purpose of eradicating an epidemic at a distant point in the county, where the circumstances of location and the nature of the disease are such that the County Health Officer could not be expected to give his personal attention thereto in the ordinary course of his business? We think there can be no doubt of the right of the board to so contract.

Appellant relies upon Hickman v. McMorris, 149 Ky., 1, as denying that right. A careful reading of the opinion in that case shows, however, that it is not at all controlling in this case. In the McMorris case, the County Board of Health had regularly appointed Dr. Scarborough as Health Officer, and he having declined to discharge the duties of his office, the County Board of Health employed Dr. McMorris to perform the same duties, supervisory or otherwise, that the law imposed upon Dr. Scarborough, and thus placed the county in the attitude of paying two men for precisely the same services. Under that state of case this court properly held that there could be but one County Health Officer; it did not hold that the board could not employ the necessary assistants to enable the board and its Health Officer to protect the public health in times of epidemic. The contention of appelant, if sustained, would forbid the Board of Health from employing but one physician in any case, and regardless of the necessities of the case or the amount of work to be done. In this instance Dr. McDonald, at one time, had as many as thirty-six cases in his locality which required his daily personal attention. It was impossible for Dr. Kincheloe to do this work, and supervise the general health affairs of the county at the same time; and we do not believe the statute contemplated that he should have done so.

The clause of section 2055 of the Kentucky Statutes above quoted prescribes that the duties of the County Health Officer "shall be to see that the rules and regulations provided for in this act, and the rules and regulations of the State Board of Health, be enforced." The record shows that Dr. Heizer, acting for the State Board

of Health, was on the ground and had made certain recommendations, and that McDonald was employed to carry out those recommendations. In requiring the County Health Officer "to see that the prescribed rules and regulations are enforced," does not necessarily contemplate that he shall personally do the work. On the contrary, it contemplates rather a medical supervisory service over the employees and assistants of the board.

It was so held in Trabue v. Todd County, 125 Ky., 813, where this court said:

"The Health Officer is the executive officer of the local board. He acts for it to execute its lawful demands in such matter. His duty is that of oversight and direction, more than personal execution."

In speaking of the nature and functions of the County Board of Health, in City of Bardstown v. Nelson County, 25 Ky. L. R., 1479, 78 S. W., 169, the court said:

"The county boards of health are county officials having duties to perform toward the public within their counties; their compensation is required to be fixed and paid through the fiscal courts of the counties. It was competent for the legislature to create these governmental agencies, and to impose upon them the discharge of certain duties to the State and counties. If the legislature sees proper to have the police laws of the State looking to the preservation of the health of the public, executed by a body of officials selected and chosen with reference alone to their fitness for that delicate and important task, instead of imposing it on the fiscal courts, or town councils, it is clearly within their power to do so. But when they do so, the county board becomes an auxiliary department of the county government. The express authority with which they are clothed by statute carries with it every implied authority necessary to execute it. As they could not execute the statute for the benefit of the county, without incurring a liability to pay it, and as no other means are provided, it folows that the liability must be paid by the county as its other obligations are, by money derived from county taxes, levied by the fiscal court, the only tribunal authorized by statute for levying county taxes."

Walker v. County of Henderson, 23 Ky. L. Rep., 1267, 65 S. W., 15, is directly in point. In that case Walker had been employed by the County Board of Health to take charge of the County Pest-house during an epidemic of smallpox, and his admission as superintendent of the

Pest-house was denied him by the committee of the Fiscal Court. Walker sued for compensation for his services pending the litigation between the Fiscal Court and the County Board of Health for the possession of the Pest-house, which had finally resulted in a victory of the County Board of Health. In sustaining Walker's claim, the court said:

"The County Board had authority to resume charge of the epidemic and to employ physicians for the treatment of patients confined in the pest-house. This necessarily involved the power and right to discharge those who had been employed by the Fiscal Court during the interregnum; and it was the duty of the Fiscal Court to make fair and reasonable compensation to the persons so employed whether they approved their employment or not. *The power to determine what physicians, nurses, guards and attendants are necessary is left to the discretion of the Board of Health,* but the power to fix the compensation of the person so employed, like the compensation of the County Boards themselves, is vested in the Fiscal Court of the county."

From these abundant authorities, it is clear that the ordinary duties of the County Health Officer, for which he is paid a yearly salary, are largely executive and supervisory, in seeing that the rules and regulations provided by law, and the rules and regulations of the State Board of Health, are enforced. As was well said by the chancellor, it is his duty under the statute, to take general superintendence of all contagious diseases, and to institute quarantine and fumigate premises; and to carry out these general purposes the County Board of Health has power, under the law, to employ such other physicians, and nurses, guards, and attendants as may be necessary to administer treatment and stamp out the disease. If there should be any doubt about the application of the foregoing rule as a general proposition, certainly there can be no doubt of its application in this case, since the treatment was not only widely extended, but had to be administered at points distant from the county seat where the County Health Officer resided. His compensation was merely nominal, and cleary did not contemplate that he should render the extraordinary services required in this case.

Judgment affirmed.