# Board of Trustees of the Highland Park Graded Common School District No. 46, et al. v. McMurtry, et al.

(Decided April 13, 1916.)

## Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. **Health—Powers of State and Local Boards of.**—Under sections 2049 and 2055 of the Kentucky Statutes the State and local boards of health have general supervision of the health of the citizens of the State and power to inaugurate and execute such rules and regulations as may be necessary to secure sanitary conditions and prevent and suppress infectious or contagious diseases.

2. **Health—Duties and Power of Health Officer—Vaccination of School Children.**—The health officer is the agent and executive officer of the local board and may perform many duties without the express sanction of the board. But he has not authority, without the direction of the board, to order the vaccination of all children attending a public school as a condition precedent to their attendance.

3. **Health—Powers of State and Local Boards to Order Vaccination of School Children.**—These boards have power, when there is reasonable apprehension of an epidemic of smallpox in a public school, to order the vaccination of the school children as a condition precedent to their right to attend the public school. Whether they have authority to order vaccination of the children as a condition precedent to their right to attend school, in the absence of reasonable apprehension of an outbreak of this disease, is not decided.

4. **Health—Boards of—Cannot Exercise Arbitrary Power—Right of Court to Restrain.**—Health boards cannot adopt unreasonable or arbitrary rules or regulations, or without cause harass the public or subject individuals to expense or inconvenience; and if they undertake to exert authority not within their powers, or not needed for the purpose of conserving or protecting the health of the people, they may be restrained by the courts.

5. **Health—Discretion of Boards of Will Not Be Interfered With Unless Abused.**—The power and discretion lodged in health boards will not be interfered with by the courts unless it is plainly abused.

W. S. SANFORD for appellants.

A. SCOTT BULLITT, County Attorney, and J. L. SULLIVAN, Assistant County Attorney, for appellees.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

This suit was brought by the board of trustees of the Highland Park Graded Common School District against the members of the county board of health of Jefferson county and Dr. Whittenburg, the county health officer, for the purpose of enjoining them from enforcing an order directing vaccination by a day named in the order of all school children attending the graded school in question who had not been vaccinated within seven years preceding the issual of the order.

After the issues had been made up, the case was submitted on the evidence and an agreed state of facts and the petition dismissed.

Section 2049 of the Kentucky Statutes, which is a part of the chapter devoted to the powers and duties of the State Board of Health, provides, in part, that "the board shall have general supervision of the health of the citizens of this State     *   *   *   and are further empowered to make and enforce rules and regulations to obstruct and prevent the introduction or spread of infectious or contagious diseases to or within the State."

In section 2055 provision is made for the appointment of local boards of health for the respective counties in which they reside, and these county boards "are authorized and shall have power to enforce the rules and regulations adopted by the State Board of Health." It further provides that "such local boards are empowered and it shall be their duty to inaugurate and execute and to require the heads of families and other persons to execute such sanitary regulations as the local board may consider expedient to prevent the outbreak and spread of cholera, smallpox, yellow fever, scarlet fever, diphtheria and other epidemic and communicable diseases, and to this end may bring the infected population under prompt and proper treatment during premonitory or other stages of the disease, and they are empowered to go upon and inspect any premises which they may believe are in an unclean or infectious condition, and it shall be empowered to fix and determine the location of an eruptive hospital for the county, sufficiently remote from human habitation and public highways as in its judgment is safe." And also directs that "The local board shall appoint a competent practicing physician who shall be the health officer of the county and secretary of the board, whose duties shall be to see that the rules and regulations pro-

vided for in this act, and the rules and regulations of the State Board of Health are enforced.''

In the chapter on smallpox, embracing sections 4608-4618, of the statutes, further provision is made for the prevention and spread of smallpox and the duty enjoined on parents, guardians and other persons having the care, custody or control of children to have the same vaccinated.

The graded school district here in question is located in Jefferson county, outside the corporate limits of the city of Louisville, and Dr. Whittenburg is the health officer for Jefferson county appointed by the local board of health of the county, which board in turn had been appointed by the State Board of Health.

It further appears that the State Board of Health had adopted a regulation known as rule thirty-five reading: ''No person shall become a member of any public school within the jurisdiction of this board, as teacher or scholar, without furnishing a certificate from some reputable physician that he or she has been successfully vaccinated, and has been re-vaccinated at least once every seven years.''

On January 10, 1916, Dr. Whittenburg, in his capacity as health officer for Jefferson county, and purporting to act by order of the Jefferson county board of health, served on each of the trustees of the graded school a notice in writing, which notice, after setting out rule thirty-five of the State board, recited that ''information has come to this office that the rules concerning vaccination in your school are not being carried out in accordance with the instructions of the board of health. * * *

''I expect each child enrolled to bring a certificate of successful vaccination, and file same with the teacher and principal in charge. You have at present an infection of smallpox in your immediate school vicinity. * * * Vaccination must follow immediately, and certificates must be on file by the twentieth day of this month from all children who have not already complied with the above instructions. In case of failure, they must be sent home.''

It appears, however, that Dr. Whittenburg issued this order or notice without having been expressly so directed to do by the county board or the State Board of Health; and the trustees of the graded school refusing to obey the instructions contained in the notice, the county board of health, on February 4, 1916, held a meeting

and adopted a resolution reciting that "it appearing that there are a number of smallpox cases in Highland Park and in the vicinity of the school houses in district No. 46, and that an epidemic is threatened in that neighborhood, and it further appearing that the board of trustees of the Highland Park Graded Common School District No. 46, and the principal of the school, wilfully refused to enforce rule No. 35 adopted by the State Board of Health; * * * now, therefore, it is ordered by the county board of health that the county health officer, Dr. Whittenburg, shall take all necessary steps by taking out warrants and instituting prosecutions against said parties, to the end that the vaccination laws of the State of Kentucky and the rules and regulations of the State Board of Health be vigorously enforced and the lives of the school children and other residents of Jefferson county be protected."

When this resolution was adopted by the county board of health Dr. Whittenburg again notified in writing each of the school trustees to have all children attending school and not holding a certificate of successful vaccination, to be sent home and not allowed to re-enter without first showing a certificate of successful vaccination from some reputable physician. This notice further directed the trustees that it must be obeyed within twenty-four hours after its service.

Aside from the stipulation of fact, in which it was agreed that there was a county board of health in Jefferson county composed of certain named persons, and that Dr. Whittenburg was the duly appointed health officer of the county, and that rule thirty-five had been adopted by the State Board of Health, the only evidence in the case consists of the deposition of Dr. Whittenburg. In his evidence he said, in substance, that he issued the notice of January tenth under what he conceived to be his authority as health officer of the county and without having been expressly directed to do so by either the State Board of Health or the county board of health. That when this notice was not obeyed, the county board of health had a meeting and adopted the resolution which was served on the trustees on February 4th. He further said that at the time of or before the issual of the notice in January, there was a child in the graded common school district who was afflicted with smallpox, and that subsequently several other cases of smallpox developed

at different places on the border line of this school district, although none of the persons afflicted lived in the school district.

Further testifying, he was asked and answered the following questions: "Q. In your opinion, and from what you know of the situation out there, has the existence of those five cases of smallpox also caused a considerable exposure of other people to smallpox? A. Yes, I think so; there can be no question about that. Then you can't tell how far these exposures run. Q. Doctor, at the time you sent these communications about which you have testified, with reference to enforcing this rule thirty-five of the State Board of Health, was or not the smallpox situation out there dangerous, or what was the nature of the situation? A. I considered it dangerous. On one occasion here we had one infection here in Louisville, a negro man, and I followed it thoroughly through, and tried to see if I could get in touch with where there were other cases around here, and I was unable to; that I did in the State generally, and that winter we had 641 cases from that one negro man. I mention this to show how it will spread where people are unvaccinated. Q. Does the presence of five cases of smallpox constitute an epidemic or create any danger of an epidemic breaking out? A. Yes, there is no question about that. Q. Doctor, from your knowledge and experience as a physician, and especially your knowledge and experience with reference to this disease of smallpox, state whether or not vaccination is a prevention of smallpox? A. It is an absolute, positive preventive for seven years, and thereafter immunity may partially run out, and a mild form may occur later in life, the frequency of its occurring depending on the length of time from vaccination, and I have never seen any one die that had been vaccinated at any time in life, even in infancy, from smallpox. It is the only known method of preventing the disease throughout the civilized world, the only preventive of the disease endorsed by all civilized countries on earth. Q. After a period of seven years has elapsed from vaccination, does or not the efficacy of it diminish? A. Yes, you lose a part of your immunity. In some cases you do not lose any. Q. Can or not that immunity be regained by a fresh vaccination after seven years have elapsed? A. Yes, if you lose immunity, it is restored by re-vaccination, and a positive preventive again for the next lease or the next length of

time. Q. Is it or not the generally accepted view of the medical profession that vaccination should be repeated after seven years have elapsed, at intervals of seven years? A. Yes, that is accepted by all reputable physicians.

"Q. Now, doctor, though a case of smallpox is mild or may be mild, is it or not by reason of that fact any the less likely to give smallpox to other persons? A. No, I have seen them where they were in the very mildest form give it to others, of the most malignant type and die. I have seen that in my own experience. Q. Is the requirement of vaccination every seven years one which is necessary to prevent the spread of the disease? A. Yes, that is necessary to prevent the spread of it, and by following that system up we can get rid of it entirely. It is an absurd thing for a person to have smallpox. Q. What is the opinion of the medical profession as to the efficacy of vaccination? A. The medical profession stands practically as a unit on that. I have had occasion to look at that carefully, and I have never found any reputable physician opposing vaccination. I have found some few physicians that were ignorant along medical lines opposing it, but found no reputable physician opposing vaccination.

"Q. Now, doctor, why would you state, as you have stated, that the presence of five cases of smallpox in the neighborhood of or adjacent to the Highland Park School District No. 46 constitutes an epidemic or imminent danger of an epidemic—why would you state that from your knowledge of the nature of the disease? A. All the epidemics that have spread here in Louisville in the last fourteen years spread practically in the same manner; a case brought in, you know, and people not properly vaccinated, and it spread just in that way. All epidemics spread just from one case. That has been my experience for the last fourteen years. Q. State what is the nature of the disease with reference to the degree of contagiousness? A. It is highly contagious, one of the most highly contagious diseases I think known to the medical profession. Q. In your opinion did the smallpox situation in or near this school district at the time you took these steps that you have testified about, did the situation at that time in your opinion require that this rule of the State Board of Health be enforced? A. Yes, sir. Q. Is that the situation at present? A. Yes. Q. If such rule

were not enforced would or not there be danger of a serious epidemic? A. Yes, in that vicinity. There are a good many people out there and children unvaccinated, and all the schools in the city and the rest of the county are vaccinated very thoroughly except in one of the most distant parts of the county. Q. In your experience how many people have you vaccinated? Between sixty and seventy thousand. Q. Have you ever known in your experience any of them to die that you vaccinated from vaccination? A. I never knew anybody to die form vaccination *per se*. Q. Is or not vaccination dangerous? A. No, there is not a possible chance for anybody to die, I didn't think, from vaccination, unless they do not take the proper care of it. If there is any death at all, it will come from some infection like a scratch with a pin or something like that. A person can die from a scratch from a pin causing blood poisoning, but from vaccination there is no chance for them to die. That has been my experience. Q. Is that the general experience of the profession? A. Yes, sir.''

On behalf of the school trustees the argument is made that Dr. Whittenburg, in his capacity as health officer for Jefferson county, was without power or authority to demand the observance of the notice issued by him on January 10, 1916, because he had not been expressly directed by either the State board or the county board to take the action set forth in this notice, and we may first dispose of this question.

It will be noticed that under section 2055 of the statutes it is the duty of the health officer of the county ''to see that the rules and regulations of the State Board of Health are enforced,'' and among the rules adopted by the State Board of Health was rule thirty-five heretofore set out, providing that no person shall become a member of any public school without furnishing a certificate that he or she has been successfully vaccinated once every seven years; and it is the contention of counsel for the local board of health that under authority of this rule and the power conferred by the statute, Dr. Whittenburg, as health officer, independent of any action on the part of the local board, had power to take the action set out in the notice of January 10th.

The health officer of the county is primarily the agent and executive officer of the local board, and is charged with the duty of enforcing such rules and regulations as

the State board or the county board may adopt within the scope of the powers conferred upon them by the statute. But we are not prepared to say that without express authority from either the State board or the county board the health officer would have power to take the responsible action assumed to be exercised in this notice of January 10th. It is quite a serious matter to order, as was done in this notice, that all of a great number of children attending a public school shall be vaccinated within a certain time or denied the privilege of attending school, and we are inclined to the view that before the health officer undertakes to demand the enforcement of a preventive regulation like this affecting so many people, he ought to have express authority so to do from either the State or the county board.

We do not of course mean to hold that before the health officer can act in any case he must be armed with express authority from one of these boards, because many matters might come up in connection with the duties of his office that he should be permitted to perform, in the exercise of a sound discretion and within the scope of his general authority, without having the express sanction of either the State or county board.

And so we do not think it would be wise or prudent to attempt to describe in detail the things a health officer may or may not do without the express direction of one of these boards. Sufficient for the purpose of this case is it, to say that in our opinion it would be investing the health officer with more authority than was contemplated by the statute if he should be given the power on his own volition to direct that all children attending one or more public schools should be promptly vaccinated or else denied the privilege of attending the school; Taylor v. Adair County, 119 Ky. 374; Hickman County v. Scarborough, 150 Ky. 1.

So far, however, as the questions arising in this case are concerned, it is not important whether Dr. Whittenburg did or did not have the authority attempted to be exercised at the time he gave the notice of January 10th because subsequent to this, and after having been expressly directed by the county board so to do, he gave the notice of February 4th, and we may assume that the lower court, in dismissing the petition of the school trustees, considered that they were under a duty to enforce compliance with this last notice. And as this notice was

given by direct authority of the local board of health, the principal question in the case is, did the local board have power to direct the action set forth in this notice to be taken?

Counsel for the school board insist that neither the State board nor the county board of health had authority to adopt or enforce a regulation requiring the vaccination of school children as a condition precedent to their right to attend the public schools of the State. It is further contended in this behalf that there was not an epidemic or a threatened epidemic of smallpox in the Highland Park Graded School Dsitrict at the time of the issual of the order of February 4th.

In disposing of these questions we will not stop to discuss the issue raised that vaccination is not a safe and valuable preventive for smallpox. There may be some difference of opinion as to its efficacy, but the weight of medical authority supports the view that it is not only a safe but a valuable preventive: Jacobson v. Massachusetts, 197 U. S. 11, 49 L. Ed. 643.

Nor is it necessary to determine whether the action was taken under rule thirty-five of the State board or by the direction of the local board under the power vested in it. Each of these boards is charged independently with preserving the public health and with taking such action as in the exercise of a reasonable discretion may be deemed necessary to suppress and prevent the spread of infectious or contagious diseases. The only substantial difference in their powers, in respect to taking such measures as may be necessary to conserve the health of the people of the State is that the State board is invested by the statute with larger power and greater jurisdiction than the local boards. But the local boards may under the statute exercise the authority conferred upon them without asking the advice or the consent of the State board. So that the adoption of rule thirty-five by the State board was not necessary to confer upon the local board the power attempted to be exercised, as set forth in this notice, if the conditions were such as to justify the county board in adopting this method of preventing and suppressing the spread of smallpox in the school district.

We are further of the opinion that the language of the statute is broad enough to confer on the State board and the local boards the authority to issue an order such

as the one here in question when they believe there is reasonable apprehension of an epidemic of smallpox in a school district and that the vaccination of the school children is the only means by which it can be prevented.

It is true that the precise questions as to the power of these boards to make vaccination a condition precedent to attendance upon the public schools when there is a reasonable apprehension of an outbreak of smallpox and in the judgment and discretion of the board it is necessary to require the vaccination of school children, has not heretofore come before this court, but it has frequently been adjudicated by other courts, and the uniform ruling is that when there is reasonable apprehension of the outbreak of a communicable disease such as smallpox, health boards have authority to take such action as was here directed: State v. Zimmerman, 86 Minn. 353; Blue v. Beach, 155 Ind. 121, 50 L. R. A. 64; Duffield v. Williamsport School District, 162 Pa. St. 476, 25 L. R. A. 152; Morris v. Columbus, 102 Ga. 792, 42 L. R. A. 175; State v. Hay, 126 N. C. 999, 49 L. R. A. 588; Bissell v. Davison, 65 Conn. 183, 29 L. R. A. 251; Viemeister v. White, 179 N. Y. 235, 70 L. R. A. 796; People v. Board of Education, 234, Ill. 422, 17 L. R. A. (N. S.) 709.

And although we have no direct statutory direction on this subject, a reasonable construction of the liberal powers conferred by the statute in the creation of these boards would imply a grant of authority to adopt in reference to public schools such measures as were here taken. Indeed, it would be extremely unfortunate if the legislature had limited the power of these boards in respect to dealing with situations such as this, or if the court should restrain them from taking such measures as might be by them deemed necessary to prevent an outbreak and epidemic of this disease in public schools, because there is scarcely any place where an outbreak of smallpox would spread with more rapidity or over a wider territory than if it found a starting place in one of the public schools attended by hundreds of children.

The argument is made that this construction gives to these boards great power. This is true, but necessarily so. The conditions which they were created to deal with could not be successfully met unless they had large power and discretion. In the very nature of things it would be utterly impracticable for the legislative department of the State to undertake to define the conditions that must

exist before these boards could take such action as might be necessary to control situations that are constantly coming up in various forms; and so if these agencies of the State created for the purpose of conserving the health of the people are to accomplish the objects for which they were created, they must need be given authority to take such prompt and effective action, in each case as it comes up, as in the exercise of their reasonable judgment and discretion may be deemed necessary to meet the exigencies of the occasion. They are not required to wait until an epidemic actually exists before taking action. Indeed, one of the chief purposes of their existence is to adopt and enforce such timely measures as will prevent epidemics. What they shall do and how it shall be done are matters left to their sound discretion. But of course these boards cannot adopt unreasonable or arbitrary rules or regulations or, without cause, harass the public or needlessly subject individuals to expense or inconvenience or act unless they have reasonable grounds to believe that the action taken is necessary to prevent or suppress the disease sought to be controlled. And we have no doubt of the jurisdiction of the courts to restrain these boards if they should undertake to exert authority not fairly within the powers conferred by the statute or plainly not needed for the purpose of conserving or protecting the health of the people or preventing the outbreak or spread of infectious or contagious diseases. These views are fully supported by the cases of Hengehold v. City of Covington, 108 Ky. 752; Trabue v. Todd County, 125 Ky. 809; Allison v. Cash, 143 Ky. 679; Hickman County v. Scarborough, 150 Ky. 1; Breckinridge County v. McDowell, 154 Ky. 721; Board of Health v. Kollman, 156 Ky. 351.

Whether the State board or the local boards have authority to order vaccination of all children as a condition precedent to their attendance on school, in the absence of reasonable apprehension of an outbreak of this disease, is not before us in this case, and it is not necessary to a decision of this case that we should express an opinion on this subject.

The remaining question is, did the facts authorize the issual and the enforcement of the order adopted by the local board in respect to this graded school district? This may be shortly disposed of. Keeping in mind what we have said as to the power of the boards, and that the

discretion lodged in them will not be interfered with unless plainly abused, it is apparent from the evidence of Dr. Whittenburg supplemented by the action of the local board that there was a reasonable apprehension in the minds of the board that an epidemic of smallpox might find a starting place in this school. And to prevent a calamity like this the board was authorized to take the action it did.

The judgment is affirmed.