JANVIER, Judge.
Louisiana Undertaking Company, Inc., seeks to enjoin Louisiana State Board of Embalmers from trying it on certain charges of violating certain rules and regulations of the Board.
Plaintiff is a Louisiana corporation engaged in the embalming and undertaking business in New Orleans. Louisiana State Board of Embalmers was created by Act No. 66 of 1914, which was amended by Act No. 224 of 1932 and Act No. 423 of 1938. See Louisiana Statutes Annotated — Revised Statutes, 37:831 et seq.
The facts are not in dispute. Under date of February 24th, 1950, the Louisiana State Board of Embalmers addressed to the said Louisiana Undertaking Company a letter in which it advised the said corporation that, at a meeting of the Board to be held on a specified date, it, the said Embalming Company, would be given a hearing and would be tried on the following charges:
“(1) That your Company, and its agents, representatives, officers and members are guilty of violating Rule 9 of the Rules and Regulations of the Louisiana State Board of Embalmers, paragraph (c), solicitation of business by agents or persons commonly known as ‘cappers’ or ‘steerers.’
“(2) That'between October 18, 1949, approximately, and December 8, 1949, approximately, you employed certain representatives and agents, who operated at Charity Hospital, New Orleans, La., for the avowed purpose of deliberately steering business to your company, to the unfair disadvantage of other companies, your competitors, in this community; that such agents and representatives, so employed by you, for a consideration, watched the list of dangerously ill patients at the said Charity Hospital, and when said patient or patients died, said capper or steerer immediately contacted the relatives, or other interested parties, of the deceased, and solicited the business of burying said deceased persons for your account.
“(3) That on or about November 17, 1949, your agent and representative contacted you, and your manager promised to pay said representative $10.00 for every burial he steered to your company.
“(4) That, therefore, you, and each of you, are guilty of wilful malpractice, unprofessional, unethical and dishonorable conduct, incompetency and un-trustworthiness in the practice of your *304 profession, under the license heretofore issued by this Board.”
The said Undertaking Company, through its attorney, appeared at the specified time and place and filed with the said Board a written document in which it “urges” and “moves” the Board to decline jurisdiction and to refuse to hear or pass upon the said charges, for the reason that the Board was without authority to adopt rules and regulations, or to attempt to enforce rules and regulations controlling the actions of an embalming company, prior to its obtaining possession of a dead human body for embalming or burial.
At the meeting, the Board refused to decline jurisdiction and announced that it intended to proceed with the hearing, but it agreed that it would postpone the hearing until the said corporation should have had sufficient time to attempt to obtain from the proper court an injunction preventing the holding of such hearing. 'Accordingly, the Undertaking , Company filed this proceeding in the Civil District Court for the Parish of Orleans and, by agreement of counsel, the application for preliminary injunction and the prayer for permanent injunction were submitted at the same time and on the same evidence, and from a judgment refusing to grant the injunction and dismissing the suit, the corporation has appealed to this Court.
The sole contention of the Undertaking Company is -that the Board of Embalmers has no legal authority to control its action in the securing of business; that, because of the wording of the statute under which the Board operates, the Board may inquire into the operations of the embalming business only so far as ■ those operations iiivolve the proper care and disposition of “dead human bodies,” and that it cannot in any way control the method by which an embalming company may obtain its business. "
The Board has adopted certain rules, among them Rule 9, and, among the provisions of Rule 9, we find that the Board may, in its discretion, revoke or cancel any certificate if it be proven to the satisfaction of a majority of the Board that there has been “solicitation of business by agents or persons commonly known as 'cappers' or ‘steerers’ ”, or if there has been “unprofessional, unethical or dishonorable conduct.”
Counsel for plaintiff argues that the Board is without authority to adopt those provisions of that rule from which we have quoted and that the Board, under the statute under which it operates, may concern itself only with the actions of an embalmer in taking care of and preparing for burial the dead bodies of human beings, and that the Board cannot concern itself in any way or control the actions of an embalmer in conducting the preliminary steps for obtaining the deed human bodies for the purpose of properly preparing.and embalming them.
The portion of the statute which, counsel for the Board argues, gives the Board authority to make and to enforce this rule is section 840 of Title 37 under which the Board is authorized to:
“Adopt by-laws, rules, and regulations to regulate the practice of embalming or the business of funeral directing in connection with the care and disposition of dead human bodies in this state.”
While it is true that that section of the statute does not expressly authorize the Board to make a rule prohibiting the employment of “cappers” or “steerers”, we have not the slightest doubt that the right to make such a rule is implicit in the entire wording of that section, and that the purpose of the Legislature in enacting the statute and in creating the Board would be totally emasculated if it should be held that the Board may regulate the conduct of the embalming business only after those engaged in it have obtained the custody of the dead human bodies.
Our view is that the entire operation of the embalming business, from beginning to end, was what the Legislature intended to regulate, and this view results' from a realization of certain facts which are clearly and forcibly set forth in Pierstorff v. Board of Embalmers, Inc., 68 Ohio App. 453, 41 N.E.2d 889, 890:
“Not only from the viewpoint of sanitation but from other considerations, there are few fields of business *305 enterprise, profession or occupation with which the police power of the state may more appropriately extend its controlling 'and regulatory authority than that of the burial of the dead. From earliest times and among all peoples, this ceremony or rite has been attended with considerations of special dignity, decency and honor. Appellant is not here charged with ‘immoral’ conduct, as that term is generally understood and used in'legal parlance, but there are many of the finer ‘moral’ requirements inherently associated with the professional conduct of any business or profession, and particularly in this field, which control the actions of a morally and intellectually honest man without suggestion from others and without printed rule. To define, by a set of rules and regulations, the manner in which these delicate requirements shall be met, would appear quite difficult of accomplishment, though it might be done. But these requirements are easily recognized when met, and their absence is glaring to the trained eye and mind and shocking to all the sensibilities of men.
“Authorities are cited where it is held that in the absence of statutory or board definitions of the term ‘unprofessional conduct,’ one could have no standard by which to gauge his conduct and that it is an arbitrary abuse of power to rest the authority to revoke a license within the discretion of an administrative board. The Ohio statutes on licensing and revocation of license of physicians and surgeons, midwives, osteopaths, optometrists and dentists, etc., are not uniform — in some cases the statute undertaking to set up standards and to define ‘grossly unprofessional’ conduct; in others granting the appropriate board powers to make rules and regulations, in others leaving the matter to the administrative discretion of the board. * * *.
“The great weight of authority, and what we consider the better reasoned discussions bearing directly upon the question here involved, support the view that the statute involved in this case is not void and ineffective because it does not define the term ‘unprofessional conduct,’ nor is the board without power to revoke a license because it has not set up standards with reference to that term.”
We can think of no actions which would be more objectionable, and therefore more in need of regulation than that which it is charged the plaintiff here is engaged in doing. Such actions bring to mind the vulture hovering over the dying animal' preparatory to swooping doiwn upon it a£ soon as the breath leaves its body.
If one embalmer may be permitted to engage in this practice without regulation, then all must be so permitted, and we are horrified at the thought of what might result should many embalmers engage un-restrictedly in the practice of soliciting around hospitals and forcing their attentions upon the relatives of seriously ill patients.
Counsel for appellant calls attention to two facts, each of which he argues supports his contention that the Legislature, in enacting the statutes under which the Board operates, did not intend that the Board should be given the power to prohibit the employment of “cappers” or “steerers”.
Counsel first calls attention to the fact that the Legislature has seen fit to create other boards to regulate other businesses or professions, and that, in some instances, in some of the statutes creating such other boards, the respective boards are expressly given the right to prohibit advertising or soliciting. He argues that, since the Legislature in certain of those other cases saw fit to expressly give authority to prohibit solicitation or advertising and did not see fit to expressly give such authority to the Board of Embalmers, it necessarily follows that the Legislature intended to deny such right to the Board of Embalmers.
We agree that in certain situations the rule that to expressly include one is evidence of intention to ■ exclude others is sound. But we do not agree that that rule should be applied here. There may be cases in which it is doubtful whether soliciting of business or advertising is ob *306 jectionable. There may be two views on the subject and in those cases in which the Legislature expressly authorized the Board to prohibit soliciting or advertising the Legislature intended to express its view on the subject. In this instance we feel so strongly that the practice of employing solicitors or “cappers” or “steerers” is so objectionable that the Legislature no doubt realized that there was no necessity to expressly give the Board the right to prohibit such practice, and that the right to prohibit such practice necessarily flowed from the authority given the Board to adopt rules and regulations regulating the practice of embalming or the business of funeral directing.
The other fact to which counsel directs attention is that, whereas the latest, expression of the Legislature on the subject, Act No. 423 of 1938, (that is the latest expression prior to the enactment of the Louisiana General Statutes of 1950) and the earlier statute, Act No». 224 of 1932, both provided that the Board should enact rules and regulations governing the practice of embalming and the business of funeral directing “in connection with the oare and disposition of dead human bodies * * * ”, the original statute, Act No. 66 of 1914, which first created the Board, provided only that the Board should make rules and regulations “whereby the practice of embalming and the business of undertaking shall be regulated.”
Counsel says that, by the Act of 1914, the Board was given the right to regulate the business both before and after the embalmer should obtain possession of the dead human body, but that when, in the later statutes of 1932 and of 1938 and in the Louisiana General Statutes of 1950, it was provided that such rules and regulations should control the actions of the embalmer or the undertaker in connection with the care or disposition of dead human bodies, the Legislature evidenced the intention of denying the right of the Board to concern itself with the actions of the embalmer or undertaker prior to the securing of the dead human body. We cannot agree. It may be that the Legislature intended to say that the business of burying dead animals w>as not to be regulated by the Board, or it may be that, in the preparation of the later acts, the words “in connection with the care and disposition of dead human bodies” were included without any particular intention, but we are certain that the Legislature, by inserting those words, did not intend to say that the Board could not regulate the business of embalming or un-dertalcing except after the embalmer or the undertaker had secured possession of the dead human body for embalming or burial.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.