AMOS QUESENBERRY, *et al.*

**v.**

J. S. ESTEP, *et al.*

MEMBERS OF WEST VIRGINIA BOARD OF EMBALMERS, *etc.*

(No. 10827)

Submitted September 26, 1956. Decided December 22, 1956.

427

*John G. Fox,* Attorney General, *Robert E. Magnuson,* Assistant Attorney General, for appellants.

No appearance for appellees.

*Ernest K. James, E. Glenn Robinson,* amici curiae for the West Virginia Press Ass'n.

*Steptoe & Johnson, Eugene G. Eason,* amici curiae for Davis Funeral Homes, Inc.

*Vincent* v. *Chaney,* amicus curiae for West Virginia Funeral Directors Ass'n.

HAYMOND, JUDGE:

This is a proceeding instituted in the Circuit Court of Kanawha County on May 10, 1954, in which the plaintiffs seek a declaratory judgment to determine the question of the validity of certain rules and regulations

promulgated by the West Virginia Board of Embalmers and Funeral Directors on January 28, 1954, effective as of May 15, 1954, under the provisions of Chapter 49, Acts of the Legislature, 1933, Extraordinary Session, as amended by Chapter 45, Acts of the Legislature, 1941, Regular Session, as amended by Chapter 149, Acts of the Legislature, 1951, Regular Session. The foregoing statute as so amended now appears as Chapter 30, Article 6, Sections 1 to 12, inclusive, in Michie's Annotated Code, 1955. The plaintiffs are Amos Quesenberry, a duly licensed embalmer and funeral director, and Glenn Webb, and the defendants are the West Virginia Board of Embalmers and Funeral Directors and J. S. Etsep, R. C. Jones, C. A. Ruttencutter, B. F. Whitescarver, Melvin T. Strider, Marshall Shanklin and N. H. Dyer, who constitute the seven members of the board.

By their amended petition the plaintiffs challenge the validity of rule eleven and rule twelve of the rules and regulations of the board on the grounds that they are in direct conflict with the statute under which they were promulgated by the board, that they are unreasonable, arbitrary and oppressive, that they contravene the statutory provision which permits proper advertising, and that they violate the Fourteenth Amendment to the Constitution of the United States and Sections 1, 7 and 10, Article III, and Section 1, Article V of the Constitution of West Virginia. The plaintiffs allege that they are engaged in the business of funeral directing and embalming in Beckley, Raleigh County, West Virginia; that, in conducting such business, they have engaged in advertising which is now prohibited by the foregoing rules; that if they continue to conduct their business in the manner in which it has been conducted in the past and as they intended to do if the foregoing regulations prohibiting the advertising methods heretofore practiced by them had not been promulgated, the license of the plaintiff Amos Quesenberry would be subject to revocation and suspension in proceedings which will be instituted by the board for that purpose; and that if the plaintiffs are required by the foregoing rules to refrain from conduct-

ing their business as they have conducted it in the past they will suffer irreparable damage, their business will be destroyed, and they will be deprived of their property without due process of law.

The prayer of the amended petition is that the rights of the parties to this proceeding be declared, that the question of the validity of the foregoing statute, rules and regulations be determined, that they be held to be invalid, and that the plaintiffs be granted general relief.

By their answer to the amended petition the defendants deny the material allegations of the amended petition, aver that the statute and the rules and regulations promulgated by the board are valid, and pray that they be so declared and determined in this proceeding.

The case was heard by the circuit court upon the amended petition of the plaintiffs, the answer of the defendants, and depositions filed by the plaintiffs. In the final decree entered October 18, 1955, the circuit court found that this proceeding was not prematurely instituted; that the title of the amendatory act of 1951 was sufficient; that the provisions of the statute were not violative of the rights of the petitioners under the Constitution of the United States or the Constitution of this State; and that the provisions of the statute do not authorize the board to promulgate a rule prohibiting unethical advertising; and by that decree held that rule eleven was valid except insofar as it may be applied to regulate the rate of discount given by funeral directors for business not obtained by means of solicitation and that rule twelve was not valid except insofar as it prohibits the use of false and misleading advertising and the advertising of free material and free service including ambulance service.

The plaintiffs did not file a brief in this Court and this proceeding was submitted for decision upon the brief and the oral argument in behalf of the defendants. By leave of this Court West Virginia Funeral Directors Association, as amicus curiae, filed a brief urging re-

versal, and West Virginia Press Association, as amicus curiae, and Davis Funeral Home, Inc., as amicus curiae, filed separate briefs urging affirmance, of the final decree.

The defendants assign as error the action of the circuit court (1) in holding that the provisions of the statute, as amended, do not authorize the West Virginia Board of Embalmers and Funeral Directors to promulgate a rule of the board which defines unethical advertising by licensed embalmers and funeral directors and (2) in refusing to hold valid the rule promulgated by the board which defines and prohibits unethical advertising.

The West Virginia Board of Embalmers and Funeral Directors was created and its powers and duties are defined by Chapter 49, Acts of the Legislature, 1933, Extraordinary Session, as amended. As presently constituted the board consists of seven members who are appointed by the governor, with the advice and the consent of the senate, for a term of four years. All the members of the board, except the state health director, are licensed embalmers and practicing funeral directors with a minimum experience of five consecutive years in this State, and each member, before discharging the duties of his office, is required to take and subscribe the oath prescribed by the Secretary of State.

Under the statute no person may engage in the profession or business of embalming unless he holds an embalmer's license issued by the board and no person may engage in the profession or business of funeral directing unless he holds a funeral director's license issued by the board. The failure to comply with this requirement constitutes a misdemeanor. To be entitled to an embalmer's license, a person must be at least twenty one years of age, a citizen of the United States, of good moral character, hold a high school diploma, have at least sixty hours credit of resident educational training in an accredited university, have completed one year of apprenticeship under the supervision of a licensed embalmer, be a graduate of an approved school of embalming, and have pass-

ed an examination conducted by the board. To be eligible to receive a license as a funeral director, a person must hold an embalmer's license issued by the board, be duly registered by the board as an apprentice, have served an apprenticeship of not less than one year under the personal supervision of a licensed funeral director, and have passed an examination conducted by the board. The license of an embalmer and the license of a funeral director must be renewed annually.

To the extent here pertinent, Section 3, Article 6, of the statute, provides in part:

"The board shall have power and it shall be its duty to make and enforce all nesessary rules and regulations, not inconsistent with this article, for the examination and licensing of funeral directors, and the general practice of funeral directing; the examination and licensing of embalmers and the general practice of embalming and the registration and regulation of apprentices."

Section 7, Article 6, of the statute contains, among others, these provisions:

"The board may either refuse to issue, or may refuse to renew, or may suspend, or may revoke any license, or certificate of registration issued by it for any one or combination of the following causes: * * * ;

"(d) The use of false, misleading or unethical advertising by any licensee or applicant for a license or certificate of registration; * * * ;

"(g) Solicitation of business by the licensee, his agents, assistants or employees, whether such solicitation occurs after death or while death is impending: Provided, that this shall not be deemed to prohibit proper advertising; * * * ."

The rules and regulations promulgated by the board, the validity of which is involved and challenged by the plaintiffs in this proceeding, are designated respectively as Rule Eleven and Rule Twelve:

Rule Eleven is expressed in this language:

"11. IMPROPER METHODS FOR SEEKING BUSI-NESS. No licensee or apprentice or other person associated with a funeral establishment shall solicit business or shall offer any inducement, pecuniary or otherwise, for employing solicitors, agents, canvassers or others for the purpose of securing or attempting to secure business; such persons shall not issue any gift certificate or discount certificate or offer any discount in excess of five per cent (5%) for cash payment within ten (10) days, or offer any other discount or business-getting plan, scheme or device not fully recognized and approved by the funeral profession as standard funeral service practice; such persons shall not use donations, gifts, bonuses or acts of service designed to place the recipient in a position of obligation or indebtedness; and such persons shall not transfer or offer to transfer any property or service as payment of or in token for business secured, influenced or otherwise provided or in promise thereof; such persons shall not for the purpose of getting business call upon, telephone, write or otherwise communicate with or provide flowers or gifts to the sick or offer ambulance or other service to them, and such conduct shall be presumed to be for the purpose of getting business unless there be such relationship of family, business, friends, fraternity, or otherwise as would prompt such conduct in the normal course of social affairs."

Rule Twelve is expressed in this language:

"12. ADVERTISING. (a). No licensee, apprentice or other person, firm or corporation associated or in any wise connected with a funeral establishment shall use or sponsor the use of any false, misleading or unethical advertising in any manner whatsoever. All advertising is here declared to be unethical, except only as hereinafter approved, and such persons referred to above are prohibited from the use of any advertising except only as hereinafter approved. All price advertising is here declared to be unethical without exception, and such persons referred to above are prohibited from the use thereof. All advertising of free material or free service, in-

cluding free ambulance service, is here declared to be unethical, and such persons referred to above are prohibited from the use thereof.

"(b). The following types of advertising are approved as ethical, subject to the limitations stated:

"(1). Listing of name in bold type and address and telephone number in normal type in telephone directories, including the classified section, but no other type of advertising in telephone directories.

"(2). Advertising copy similar to a professional card in church bulletins, school publications, trade journals, newspapers and other similar periodic publications, provided the space utilized does not exceed one standard column in width and two inches in depth and provided the contents are limited to name of the funeral establishment, its address and telephone number and name of licensed funeral director in charge, and ambulance service.

"(3). Professional or business card, providing the contents are limited as stated in Subsection (2) above.

"(4). Spot announcements by radio and television provided the announcement or copy be restricted to the contents permitted in Subsection (2) above.

"(5). Announcement by newspaper, radio or television of an obituary notice or funeral service conducted, provided there be no other remarks, comments or description in reference to the funeral establishment other than to give its name, address and telephone number and the fact that it is or was in charge of the funeral.

"(6). Free advertising merchandise of nominal value, such as calendars, pencils, pens, thermometers, fans, matches, key containers, and similar materials, provided it carry no advertising other than the name of the funeral establishment, its address, telephone number and name of licensed funeral director in charge, and ambulance service.

"(c). Without in any way limiting the general prohibition in Subsection (a) above in relation to advertising generally and to price advertising, such persons as are referred to therein shall not by any means, directly or indirectly, or by any inference, advertise the price of any casket, box, vault, or other funeral material or supplies, or the price of any funeral, hearse, ambulance or other service; such persons shall not by any means, directly or indirectly or by any inference, advertise for himself higher quality or values or lower prices, or for others lower quality or values or higher prices, or in any way create or attempt to create an impression of comparative quality, values or prices, and any veiled, vague and/or ambiguous communication suggestive thereof shall be treated as falling within the prohibition."

Though the principal question presented by the assignments of error is whether the provisions of the statute authorize and empower the West Virginia Board of Embalmers and Funeral Directors to promulgate rules and regulations governing solicitation of business and advertising by licensed embalmers and funeral directors, other questions necessarily arise which require consideration and determination. These questions are: (1) Whether the vocations of embalmer and funeral director are subject to regulation under the police power of the State; and (2) whether the statute provides adequate standards for the guidance of the board in the exercise of its authority under the statute to regulate solicitation of business and advertising by licensed embalmers and funeral directors.

In discussing generally the source and the nature of the police power the text in 11 Am. Jur., Constitutional Law, Section 245, quoted with approval in *The City of Huntington* v. *State Water Commission*, 137 W. Va. 786, 73 S. E. 2d 833, contains these provisions:

"The police power is an attribute of sovereignty and a necessary attribute of every civilized government. It is a general term used to express the particular right of a government which is inherent in every sovereignty.

Consequently, it is inherent in the states of the American Union, possessed by every one of them as sovereign, and is not a grant derived from or under any written Constitution. In connection with this latter principle, the point of view has been expressed that the police power is a grant from the people to their governmental agents. It has also been affirmed, however, in discussing the source of the power, that the right of the legislature to exercise the police power is not only not referable to any single provision of the Constitution, but inheres in, and springs from, the nature of our institutions; and so the limitations upon it are those which spring from the same source, as well as those expressly set out in the Constitution. It is very generally regarded not as a delegated, but a reserved, power.

"The police power is as old as the civilized governments which exercise it. The states existed before the Constitution of the United States, and they possessed the police power before the adoption of that organic document. Moreover, it has been held many times that the Constitution supposes the preexistence of the police power, and must be construed with reference to that fact.

"The breadth and extent of the police power, covering the exigencies confronting the community, its adaptability, durability, inalienability, and the number of public purposes included in its scope make it a principal pillar of government. It has been stated that the police power in effect sums up the whole power of government, and that all other powers are only incidental and ancillary to the execution of the police power; it is that full final power involved in the administration of law as the means to the attainment of practical justice. Moreover, it has been said that the very existence of government depends on it, as well as the security of the social order, the life and health of the citizen, the enjoyment of private and social life, and the beneficial use of property." See also *The City of Huntington* v. *State Water Commission,* 137 W. Va. 786, 73 S. E. 2d 833; *Miller* v. *Board of Public*

*Works of City of Los Angeles,* 195 Cal. 477, 234 P. 381, 38 A.L.R. 1479, writ of error dismissed in 273 U. S. 781, 41 S. Ct. 460, 71 L. Ed. 889; *In re Guerra,* 94 Vt. 1, 110 A. 224, 10 A.L.R. 1560; *State ex rel. Webster* v. *Superior Court of King County,* 67 Wash. 37, 120 P. 861, L.R.A. 1915C, 287, Ann. Cas. 1913D, 78.

In *Hayes* v. *The Town of Cedar Grove,* 126 W. Va. 828, 30 S. E. 2d 726, 156 A.L.R. 702, this Court used this language: "The police power of a state is an attribute of sovereignty, co-extensive therewith, difficult of definition because it cannot be circumscribed by mere words, latent in its nature, yet, nevertheless, perennially existing as a vast reservoir of authority to be drawn on by the law-making branch of the government for the public good." See also *The City of Huntington* v. *State Water Commission,* 137 W. Va. 786, 73 S. E. 2d 833; *Nulter* v. *State Road Commission,* 119 W. Va. 312, 193 S. E. 549, 194 S. E. 270; *Prager* v. *W. H. Chapman and Sons Company,* 122 W. Va. 428, 9 S. E. 2d 880, 129 A.L.R. 1114; *Chicago, Burlington and Quincy Railway Company* v. *Illinois,* 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596.

The police power of the State is vested in the legislative branch of the government. It may be employed or delegated by the legislature subject only to the control of the courts to the extent that they may properly act, and under the police power the legislature may provide for the protection of the safety, health, morals, and general welfare of the people. *The City of Huntington* v. *State Water Commission,* 137 W. Va. 786, 73 S. E. 2d 833; *State ex rel. Morris* v. *The West Virginia Racing Commission,* 133 W. Va. 179, 55 S. E. 2d 263; *Hayes* v. *The Town of Cedar Grove,* 126 W. Va. 828, 30 S. E. 2d 726, 156 A.L.R. 702; *State* v. *Bunner,* 126 W. Va. 280, 27 S. E. 2d 823; *Prager* v. *W. H. Chapman and Sons Company,* 122 W. Va. 428, 9 S. E. 2d 880, 129 A.L.R. 1114.

A statute or an ordinance may not, however, under the guise of the police power, impose arbitrary or unreasonable restrictions upon the use of private property or

the pursuit of useful activities, *Carter* v. *City of Bluefield,* 132 W. Va. 881, 54 S. E. 2d 747; *Lawton* v. *Steele,* 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385; *Anderson* v. *Jester,* 206 Iowa 452, 221 N. W. 354; *Merrill* v. *City of Wheaton,* 356 Ill. 457, 190 N. E. 918; and to be valid it must bear some real or substantial relation to the public health, safety, morals, or general welfare of the area affected. *Carter* v. *City of Bluefield,* 132 W. Va. 881, 54 S. E. 2d 747; *Nectow* v. *City of Cambridge,* 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842; *Women's Kansas City St. Andrews Society* v. *Kansas City, Mo.,* 8 Cir., 58 F. 2d 593; *Hurst* v. *Burlingame,* 207 Cal. 134, 277 P. 308; *Forbes* v. *Hubbard,* 348 Ill. 166, 180 N. E. 767; *Sundlun* v. *Zoning Board of Review,* 50 R. I. 108, 145 A. 451; *Standard Oil Company* v. *City of Bowling Green,* 244 Ky. 362, 50 S. W. 2d 960, 86 A.L.R. 648; *Freeman* v. *Board of Adjustment,* 97 Mont. 342, 34 P. 2d 534.

In its brief as amicus curiae the West Virginia Press Association contends that the vocation of funeral directing is a commercial business and not a profession. The statute refers to funeral directing as a business or profession and to embalming as a business or profession, but the language of the statute does not specifically place them in or exclude them from either category. Whether either vocation, however, may be considered as a business or as a profession, a question which need not now be determined, both vocations are subject to regulation under the police power of the State. The practice of each bears a real and substantial relation to the public health and the welfare of the community affected. Though the precise question has not been determined in any prior decision of this Court, it is well settled by the decisions of appellate courts in other jurisdictions that each of the vocations of embalming and funeral directing is of a public nature which, under the police power of the State, the legislature has the power to regulate and control for the purpose of safeguarding public health, safety, morals, and the general welfare of the community. *Drummey* v. *State Board of Funeral Directors and Embalmers,* 13 Cal. 2d 75, 87 P. 2d 848;

*Mashburn* v. *Board of Funeral Directors and Embalmers,* 132 Cal. App. 2d 126, 281 P. 2d 577; *State Board of Funeral Directors and Embalmers for Florida* v. *Cooksey,* 147 Fla. 337, 3 So. 2d 502; *State* v. *Fremont Co-Operative Burial Association,* 222 Iowa 949, 270 N. W. 320; *Louisiana Undertaking Company* v. *Louisiana State Board of Embalmers,* (La. App.), 58 So. 2d 303; *State* v. *Rice,* 115 Md. 317, 80 A. 1026, 36 L.R.A., N.S., 344, Ann. Cas. 1913A, 1247; *Wyeth* v. *Thomas,* 200 Mass. 474, 86 N. E. 925, 33 L.R.A., N.S., 147, 128 Am. St. Rep. 439; *People* v. *Ringe,* 197 N. Y. 143, 90 N. E. 451, 27 L.R.A., N.S., 528, 18 Ann. Cas. 474; *Pierstorff* v. *Board of Embalmers and Funeral Directors,* 68 Ohio App. 453, 41 N. E. 2d 889; *Beatty* v. *State Board of Undertakers of Commonwealth of Pennsylvania,* 352 Pa. 565, 43 A. 2d 127; *The Prata Undertaking Company* v. *State Board of Embalming and Funeral Directing,* 55 R. I. 454, 182 A. 808, 104 A.L.R. 389; *Vaughan* v. *State Board of Embalmers and Funeral Directors of Virginia,* 196 Va. 141, 82 S. E. 2d 618; *Walton* v. *Commonwealth,* 187 Va. 275, 46 S. E. 2d 373.

Though there are some decisions to the contrary in various jurisdictions, the above cited cases which recognize and uphold the right of the legislature, under the police power of the State, to regulate and control the vocations of funeral directing and embalming, represent the weight of authority upon that question.

In the leading and frequently cited case of *The Prata Undertaking Company* v. *State Board of Embalming and Funeral Directing,* 55 R. I. 454, 182 A. 808, 104 A.L.R. 389, the opinion contains this language:

"Under present conditions of society and methods of living, it has become increasingly necessary, in the interest of the general public, for legislative bodies to regulate and control within certain limits the conduct of various businesses, trades, and professions. Examples of such regulation by legislative act may be found in branches of the medical profession, dentistry, public accounting, barbering, trained nursing, banking, and in many other lines of endeavor. The exercise by the legislature of the

right to so regulate and control is now fully recognized and justified under the police power, especially when the professions and occupations are of a public or quasi-public nature. *Coppage* v. *Kansas*, 236 U. S. 1, and cases cited. The undertaking business is an enterprise of this type, and the safeguarding of the public in relation to its health, safety, morals, comfort and general welfare is the primary object sought by and is the basis for such legislation. *People* v. *Ringe*, 197 N. Y. 143; *Keller* v. *The State*, 122 Md. 677; *Miller* v. *Johnson*, 110 Kan. 135; *State* v. *Norvell*, 137 Tenn. 82. It is of importance to all that such a business be conducted properly, and only by those who are qualified to carry out its responsibilities. Questions relating to the care of dead human bodies, their embalming and transportation, the location of the business and its equipment, sanitation, danger of infection or contagion from disease, the obtaining of required certificates and permits before acting, the orderly conduct of funerals and burials, and the like, are all of public concern."

In *Drummey* v. *State Board of Funeral Directors and Embalmers*, 13 Cal. 2d 75, 87 P. 2d 848, discussing the subject of undertaking and embalming, the court said: "Clearly, the undertaking and embalming businesses or professions are sufficiently of a public nature so that, under the police power, the legislature may regulate and control them. (See cases collected and discussed in 23 A. L. R. 71; 104 A.L.R. 402.)".

In the recent case of *Vaughan* v. *State Board of Embalmers and Funeral Directors of Virginia*, 196 Va. 141, 82 S. E. 2d 618, the Court, quoting from *Walton* v. *Commonwealth*, 187 Va. 275, 46 S. E. 2d 373, in which the constitutionality of a statute regulating funeral directing and embalming was considered and upheld, used this pertinent language:

"(1,2) Statutes of the kind under consideration generally have been considered valid. The undertaking business is one of a public or quasi-public nature, closely related to the health, safety and general welfare of a

community, and is therefore a business which under the police power may be subjected to regulation and control. In the handling of dead bodies there is a possibility of contagion and certain sanitary practices must be carried out. A state has the power to establish boards of undertaking and embalming such as has been done in Virginia.

"(3) It is also well recognized that a State may require undertakers and embalmers to secure licenses before they engage in the practice of their profession, and as a condition to securing a license applicants may be required to possess certain qualifications such as being graduates of certain prescribed schools where the profession is taught."

In 54 Am. Jur., Undertakers and Embalmers, Section 3, the text contains this language:

"The undertaking business is one of a public or quasi-public nature, closely related to the health, safety, and general welfare of a community, and is, therefore, clearly a business which under the general police power may be subjected to regulation and control. The health and general welfare of the community justify the regulation of the business of the handling of dead bodies, by reason of the possibility of contagion; such business is subject not only to statutory regulation, but to municipal regulation as well, assuming that police power in this respect has been delegated to the municipal corporation and its regulations are consistent with general laws on the subject. The state may establish boards of undertaking and embalming for the purpose of making rules for the control and regulation of the business, and the acts of such boards will be sustained unless there was an unlawful delegation of legislative power, or the boards acted in an arbitrary, capricious, or unreasonable manner. * * * .

"Regulation of the business of undertaking is, of course, subject to the general qualification that a police regulation is valid only if it is a reasonable one, appropriate for the accomplishment of a legitimate object falling within the scope of the power. Any police regulation

of the business must justify its validity on the ground that it is essential to the public health, safety, comfort, or morals. * * * ."

Under the foregoing authorities it is clear that the business or profession of embalming and the business or profession of funeral directing are subject to regulation under the police power of the State. The legislation here under consideration is manifestly designed to preserve and protect the public health and the general welfare of the community and is within the police power. The Legislature is the depository of the police power of the State and, subject to well settled and widely recognized limitations, may delegate it to boards and commissions. *The City of Huntington* v. *State Water Commission,* 137 W. Va. 786, 73 S. E. 2d 833; *State ex rel. Morris* v. *The West Virginia Racing Commission,* 133 W. Va. 179, 55 S. E. 2d 263; *Hayes* v. *The Town of Cedar Grove,* 126 W. Va. 828, 30 S. E. 2d 726, 156 A.L.R. 702; *State* v. *Bunner,* 126 W. Va. 280, 27 S. E. 2d 823.

As a general rule the Legisature, in delegating discretionary power to an administrative agency, such as a board or a commission, must prescribe adequate standards expressed in the statute or inherent in its subject matter and such standards must be sufficient to guide such agency in the exercise of the power conferred upon it. *State* v. *Bunner,* 126 W. Va. 280, 27 S. E. 2d 823; *West Central Producers Co-Operative Association* v. *Commissioner of Agriculture and Ritchie County Livestock Sales Company,* 124 W. Va. 81, 20 S. E. 2d 797; *Chapman* v. *The Huntington, West Virginia, Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502. The general rule, which requires an express standard to guide the exercise of discretion and applies to legislation regulating ordinary lawful activity, is subject to the exception that when it is impracticable to formulate a definite comprehensive rule or when the legislation relates to the administration of a police regulation and is necessary to protect the public health, morals, safety, and general welfare of the community, it is not essential that a spe-

cific prescribed standard be expressly stated in the legislation. 42 Am. Jur., Public Administrative Law, 45; *Meisel* v. *Tri-State Airport Authority*, 135 W. Va. 528, 64 S. E. 2d 32; *State ex rel. Morris* v. *The West Virginia Racing Commission*, 133 W. Va. 179, 55 S. E. 2d 263; *State* v. *Bunner*, 126 W. Va. 280, 27 S. E. 2d 823; *West Central Producers Co-Operative Association* v. *Commissioner of Agriculture and Ritchie County Livestock Sales Company*, 124 W. Va. 81, 20 S. E. 2d 797; *Rinehart* v. *Woodford Flying Service*, 122 W. Va. 392, 9 S. E. 2d 521; Annotation IIIa, 92 A.L.R. 410; 73 C.J.S., Public Administrative Bodies and Procedure, Section 30.

In *State ex rel. Morris* v. *The West Virginia Racing Commission*, 133 W. Va. 179, 55 S. E. 2d 263, in upholding the delegation by the legislature of regulatory power to the commission and sustaining the validity of rules and regulations relating to the operation of race tracks and horse racing promulgated by it, this Court said: "The police power is broad and sweeping, inherent in sovereignty and, except as restricted by constitutional authority, or natural right, which, in effect, is unlimited. The Legislature being the depository of this power, may delegate it to boards and commissions and, as a general rule, should set up standards for the guidance of such boards and commissions in the use and application of the power granted. However, there are exceptions to this requirement. The exception to the rule is well stated in 42 Am. Jur. 345, wherein it is stated: ' * * * The rule requiring an express standard to guide discretion is recognized as properly applied to statutes or ordinances regulating ordinary lawful activity, but to be subject to the exception that where it is impracticable to lay down a definite comprehensive rule, such as where the regulation turns upon the question of personal fitness or where the act relates to the administration of a police regulation and is necessary to protect the general welfare, morals, and safety of the public, it is not essential that a specific prescribed standard be expressed. * * *' This statement is supported by the ruling of this Court in *West Central Producers Co-Operative Association* v.

*Commissioner of Agriculture,* 124 W. Va. 81, 20 S. E. 2d 797, *and State* v. *Bunner,* 126 W. Va. 281, 27 S. E. 2d 823. In the very nature of things, no usable standard can be set up for the promulgation of any of the regulations under which horse racing may be conducted, and especially to guard against fraud and deceit."

In *State* v. *Bunner,* 126 W. Va. 280, 27 S. E. 2d 823, the opinion contains this language: "The power of a legislative body to vest in an administrative body or officer the legal capacity to establish and enforce regulations and rules governing businesses, which will then have the legal effect of law, although at one time challenged, is now universally sustained, but only within certain well-recognized limits. We have held that, in creating administrative machinery for the regulation of a business, the legislature itself must set up standards and definite limitations under which the administrative body may act, and must leave to it only the power to regulate and prescribe details, which are to be measured by the 'standards' so established by the legislative act. *West Central Producers Co-Operative Association* v. *Commissioner of Agriculture,* 124 W. Va. 81, 20 S. E. 2d 797; *Rinehart* v. *Woodford Flying Service,* 122 W. Va. 392, 9 S. E. 2d 521; *Chapman* v. *Huntington Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502; *Bates* v. *State Bridge Commission,* 109 W. Va. 186, 153 S. E. 305; *State ex rel. Public Service Commission* v. *Baltimore & Ohio R. R. Co.,* 76 W. Va. 399, 85 S. E. 714; *Blue* v. *Smith,* 69 W. Va. 761, 72 S. E. 1038. This general rule, however, is in some degree flexible, requiring less definite standards in cases where the establishment thereof is not practicable owing to the character of the business involved. *West Central Producers Co-Operative Association* v. *Commissioner of Agriculture, supra.* But, of more importance in the present case, is another uniformly recognized exception to the general rule, by which the legislature is much less restricted when its delegation of legislative authority is to an administrative body created for the care of public health. Ordinarily the power to delegate legislative authority must be found in the Constitution,

but, where the subject matter of the administrative authority is public health, the power is uniformly held not to originate in the Constitution, but from 'the police power'. This vast, undefinable, reservoir of power inheres in the legislative body of every sovereign state wholly independent of the Constitution. 'The police power is an attribute of sovereignty and a necessary attribute of every civilized government. It is a general term used to express the particular right of a government which is inherent in every sovereignty. Consequently, it is inherent in the states of the American Union, possessed by every one of them as sovereign, and is not a grant derived from or under any written Constitution.' 11 Am. Jur. Constitutional Law, Sec. 245. Courts generally, therefore, take the position that regulations and rules duly promulgated by a legally constituted board of health will be construed as valid wherever possible, if reasonably calculated to achieve the result intended by the legislature. *La Porta* v. *Board of Health,* 71 N. J. L. 88, 58 A. 115; *Gregory* v. *City of New York,* 40 N. Y. 273; *People ex rel. Barmore* v. *Robertson,* 302 Ill. 422, 134 N. E. 815; *Board of Trustees of Highland Park etc.* v. *McMurtry,* 169 Ky. 457, 184 S. W. 390; *Schulte* v. *Fitch,* 162 Minn. 184, 202 N. W. 719; *Crayton* v. *Larabee,* 220 N. Y. 493, 116 N. E. 355. Hence we are not rigidly controlled by the pronouncements of this Court in regard to regulations of administrative bodies which relate purely to business matters."

In Annotation IIIa, 92 A.L.R. 410, relating to the exception to the foregoing general rule, the text contains this language: "As an exception or qualification to the rule stated, it has been held that it is not always necessary that statutes and ordinances prescribe a special rule of action, but, on the other hand, some situations require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare. It may be noted that the modern

tendency is to be more liberal in permitting grants of discretion to administrative bodies or officers in order to facilitate the administration of laws as the complexity of economic and governmental conditions increases."

The text in 73 C.J.S., Public Administrative Bodies and Procedure, Section 30, contains these pertinent statements:

"Notwithstanding the general rule prohibiting the delegation of legislative functions to administrative bodies, an admixture of governmental powers may be conferred on an administrative officer or board, if there is no delegation of actual legislative power or complete surrender of judicial review. Accordingly, where the legislature sufficiently prescribes a policy, standard, or rule for the guidance of the administrative body, or otherwise confines it within reasonably definite limits, authority may be delegated to the administrative body to carry out the legislative purposes in detail, and to exercise administrative power to regulate and control. Moreover, administrative officers may be authorized to exercise administrative discretion in the application of laws enacted by the legislature, and such discretionary power delegated to an administrative agency is not 'legislative' in violation of the Constitution, if the law furnishes a reasonably clear policy or standard of action, which controls and guides the administrative officers in ascertaining the operative facts to which the law applies so that the law takes effect on such facts by virtue of its own terms and not according to whim or caprice of administrative officers."

"The legislature is not confined to that method of executing its policy which involves the least possible delegation of discretion to administrative officers, but it is free to avoid the rigidity of such a system and to choose instead the flexibility attainable by the use of less restrictive standards. Accordingly, the legislature is not required to legislate for the guidance of administrative agencies further than is practicable, and, where it is impracticable to lay down a definite comprehensive rule,

it is not essential that a specific prescribed standard be expressed. The policy of the law and the standard of action to guide the administrative agency may be laid down in very broad and general terms, provided it is capable of reasonable application, and what is a sufficiently definite declaration of policy and standard obviously varies in some degree according to the complexity of the subject to which the law is applicable.

"As compared to a delegation of authority to regulate businesses generally, the legislature may be less restricted when it seeks to delegate authority of a legislative nature to an administrative body created for a particular purpose, such as the care of public health. So it has been held that specific rules of action need not be prescribed where administrative officers are granted discretion relating to the administration of police regulations and necessary to protect the public morals, health, safety, and general welfare or requiring consideration of personal fitness. * * * ".

In enacting Section 7, Article 3, of the statute which provides that the board may refuse to issue, or may refuse to renew, or may suspend, or may revoke any license, or certificate of registration, for enumerated causes which include the use of false, misleading, or unethical advertising by any licensee or applicant for a license or a certificate of registration or for solicitation of business by the licensee, his agents, assistants or employees, whether such solicitation occurs after death or while death is impending, and also provides that proper advertising is not prohibited, the Legislature has established adequate standards for the guidance of the board in exercising the power and authority conferred upon it by the statute. It is manifest that the Legislature, in enacting the statute established a sufficiently definite policy and standard and intended to regulate, under the police power, the practice of embalming and funeral directing in this State. Though the statute does not define false, misleading, unethical or proper advertising or solicitation of business the meaning, scope and effect of these

terms are well known to, understandable by, and within the ordinary comprehension of any competent duly licensed embalmer and funeral director and the members of the board who, except the state health director, are duly licensed embalmers and funeral directors with an experience of at least five consecutive years in this State. Moreover, advertising is closely related to and in many instances is a means of soliciting business.

In *Pierstorff* v. *Board of Embalmers and Funeral Directors,* 68 Ohio App. 453, 41 N. E. 2d 889, the license of a funeral director had been revoked by the board for "unprofessional conduct," under a statute which provided that "the board may refuse to grant, may suspend, or may revoke any license granted to a person for any of the following reasons: * * * (d) If the applicant therefor or holder thereof has been guilty of immoral or unprofessional conduct;". Neither the statute nor the regulations promulgated by the board contained any definition of unprofessional conduct. In rejecting the contention of the person whose license had been revoked that the statute did not establish an adequate standard and in upholding the action of the board, the Court said: "The great weight of authority, and what we consider the better reasoned discussions bearing directly upon the question here involved, support the view that the statute involved in this case is not void and ineffective because it does not define the term 'unprofessional conduct,' nor is the board without power to revoke a license because it has not set up standards with reference to that term."

In *Beatty* v. *State Board of Undertakers of Commonwealth of Pennsylvania,* 352 Pa. 565, 43 A. 2d 127, the board had revoked the registration of a student apprentice to a licensed undertaker after the apprentice was found guilty of professional misconduct in taking a casket from a cemetery to an undertaking establishment where the body of the deceased was removed, stripped of clothing, wrapped in a blanket and reburied in a rough box w i t h o u t the knowledge or the consent of the family of the deceased. The statute empowered the

board to "refuse to grant, refuse to renew, suspend or revoke a license of any applicant or licensee" for "gross incompetency, negligence or misconduct in the carrying on of such business or profession." The court upheld the action of the board in revoking the registration of the apprentice and in the opinion said: "As to what constitutes 'misconduct' in the carrying on of the business of undertaking, a large measure of discretion must necessarily be left to the State Board of Undertakers in the first instance and to the Court of Common Pleas of Dauphin County on appeal, for misconduct may consist of the breach of any of the generally accepted canons of ethics and propriety g o v e r n i n g the respectful and reverential burial of the dead."

In *Mingo County Medical Society, Inc.* v. *Simon,* 124 W. Va. 493, 20 S. E. 2d 807, involving the action of the Public Health Council of West Virginia in revoking the license of a physician to practice medicine and surgery in this State who upon a hearing by the council had been found guilty of gross immorality and malpractice, this Court, in affirming the circuit court which sustained the action of the council, held in point 4 of the syllabus that "In a proceeding to revoke the license of a person to practice a profession on a statutory ground of 'gross immorality,' such term will be measured by the standards of the profession involved in the absence of a statutory definition thereof."

In *Semler* v. *Oregon State Board of Dental Examiners,* 294 U. S. 608, 55 S. Ct. 570, 79 L. Ed. 1086, in which was involved the question of the validity of the statute of the State of Oregon relating to the conduct of dentists, which authorized the revocation of licenses for unprofessional conduct and certain types of advertising by licensees, the opinion contains this statement: "What is generally called the 'ethics' of the profession is but the consensus of expert opinion as to the necessity of such standards."

The provisions of Sections 3 and 7, Article 6, Chapter

49, Acts of the Legislature, 1933, Extraordinary Session, as amended by Chapter 45, Acts of the Legislature, 1941, Regular Session, as amended by Chapter 149, Acts of the Legislature, 1951, Regular Session, constitute a valid delegation of the police power to the West Virginia Board of Embalmers and Funeral Directors and authorize the exercise of that power by the board. Those provisions of the statute are not arbitrary, capricious or unreasonable in character, or violative of the Constitution of the United States or the Constitution of West Virginia, and are valid.

The provision of Section 3, Article 6, of the statute, relating to the power of the board to make and enforce rules and regulations, quoted earlier in this opinion, authorizes and empowers the board to make and enforce rules and regulations relating to advertising by any licensed embalmer or funeral director or any applicant for a license or a certificate of registration and solicitation of business by any licensee, his agents, assistants or employees, except that proper advertising shall not be prohibited. Though that provision of the statute does not expressly mention advertising or solicitation of business those activities are necessarily included in and covered by the authority conferred and the duty imposed upon the board to make and enforce all necessary rules and regulations for the examination and the licensing of funeral directors and embalmers, the general practice of funeral directing and embalming, and the registration and regulation of apprentices.

In *State ex rel. Morris* v. *The West Virginia Racing Commission,* 133 W. Va. 179, 55 S. E. 2d 263, comprehensive and detailed rules and regulations promulgated by the commission, under a provision of Section 1, Chapter 71, Acts of the Legislature, 1935, Regular Session, as amended, that the commission "shall have all the powers necessary to carry out fully and effectively all the purposes of this act and shall have full power to prescribe rules, regulations and conditions under which all races

shall be conducted within the state of West Virginia.", were sustained and held to be valid by this Court.

In *Louisiana Undertaking Company* v. *Louisiana State Board of Embalmers,* (La. App.), 58 So. 2d 303, a rule promulgated by a state board of embalmers which provided that the board might revoke or cancel any certificate of an embalmer for solicitation of business by agents or persons commonly known as "cappers" or "steerers" or for unprofessional, unethical or dishonorable conduct, was sustained as valid. The rule was promulgated under a statute which authorized the board to "adopt by-laws, rules, and regulations to regulate the practice of embalming or the business of funeral directing in connection with the care and disposition of dead human bodies in this state." In holding that the foregoing provision empowered the board to promulgate the challenged rule the court said: "While it is true that that section of the statute does not expressly authorize the Board to make a rule prohibiting the employment of 'cappers' or 'steerers', we have not the slightest doubt that the right to make such a rule is implicit in the entire wording of that section, * * * ."

Rule Eleven, relating to solicitation of business, and Rule Twelve, relating to advertising, promulgated by the board, under the power and authority conferred upon the board by Sections 3 and 7, Article 6, Chapter 49, Acts of the Legislature, 1933, Extraordinary Session, as amended by Chapter 45, Acts of the Legislature, 1941, Regular Session, as amended by Chapter 149, Acts of the Legislature, 1951, Regular Session, are a valid exercise of the police power of the State, in relation to embalming and funeral directing, legally delegated to the board by the Legislature, do not violate any provision of the Constitution of the United States or the Constitution of West Virginia, and are valid and of binding force and effect.

The final decree of the circuit court is reversed and set aside and this proceeding is remanded to that court

with directions that it enter a decree sustaining the validity of Rule Eleven and Rule Twelve in conformity with the principles enunciated in this opinion.

*Reversed and remanded
with directions.*