607 S.E.2d 537

**WEST VIRGINIA CEMETERY AND FUNERAL ASSOCIATION, Beverly Hills Memorial Gardens, Inc., Palm Memorial Gardens, Inc., Forest Lawn Cemetery, Inc., Mountain View Memorial Park, and Sears Monument Co., Inc, Appellants**

v.

**WEST VIRGINIA PUBLIC SERVICE COMMISSION, Appellee.**

**No. 31719.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2004.

Decided Dec. 8, 2004.

Dennis R. Vaughan, Jr., The Vaughan Law Firm, Troy N. Giatras, Mark L. French, Giatras & Webb, Charleston, for Appellant.

Cassius H. Toon, Charleston, for Appellee.

PER CURIAM:

## I.

## FACTS

Facts in this case are undisputed. On March 8, 2003, the Legislature passed Senate Bill No 494, now codified at W. Va.Code § 24F–1–1 *et seq.* This statute authorizes the West Virginia Public Service Commission (the "Commission") to regulate the installation of certain markers that the United States Veterans Administration provides free of charge to the families of qualified veterans.

At issue in this case is the price schedule established by the Commission that limits the prices that cemeteries may charge for the installation of grave markers for deceased veterans. Specifically, the statute regulates three types of installations: placing the marker in a concrete base, attaching the marker to a stone slab purchased separately and provided by the family, or attaching the marker to a stone slab sold to the family by the installer. The Public Service Commission ultimately set the rate for each of these services as follows: $50 for the simple concrete installation, $200 for a stone installation with the family providing the headstone, and $380 for a stone installation with the purchase of the stone included.

The Public Service Commission (hereinafter "the Commission"), arrived at these rates after publishing a notice in newspapers throughout the state and serving notice upon the Division of Veteran Affairs and appellant, the West Virginia Cemetery and Funeral Association. The Commission then set a hearing for July 9, 2003. At that hearing, the Commission heard testimony from members of several veterans groups. It appears from the record that these veterans groups had sought some sort of price limits on marker installations for several years.

Monument company representatives and representatives of several cemeteries also testified at the hearing and expressed their concerns that a fixed price for installing the markers could harm their businesses. Although the language used by the Commission in its notice of hearing (discussed *infra* )

suggested it might hold additional hearings, the Commission held no further hearings. On October 7, 2003, the Commission issued proposed rules setting forth price ceilings for the various methods of installation and established a one month public comment period for the rules, which expired on November 7, 2003. During this period the Commission published the proposed rules in newspapers throughout the state, provided them to the Secretary of State's Office, and served them on several interested parties.

Appellants West Virginia Cemetery and Funeral Association and Sears Monument Company, along with several other cemeteries, submitted written comments on the proposed rules. Other parties providing comments included the West Virginia Veterans Coalition, the American Legion, and decorated veteran, Hershel Woody Williams. Using the information provided at the hearing, and after considering the comments filed in response to the rules, the Commission issued an order on December 16, 2003 setting final rules and establishing the price schedule described above.

Numerous aspects of this order, and the regulations relating to it, are challenged by the appellants. The appellants claim that the statute is an unconstitutional delegation of the Legislature's authority. They also claim several procedural defects in both the statute and the process used by the Commission to create its rules.

For the reasons set forth below, we find the statute to be constitutional, but agree that the Commission failed to follow procedure when creating the rules. We order the Commission to hold a new hearing within 180 days, and further order that the existing price schedule must stay in effect until that hearing can be conducted and new rules issued by the Commission.

## II.

## STANDARD OF REVIEW

■ Reviewing an order of the West Virginia Public Service Commission, this Court considers several issues:

The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission,* 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.

Syl. Pt. 1, *Central West Virginia Refuse, Inc. v. Public Service Commission,* 190 W.Va. 416, 438 S.E.2d 596 (1993).

## III.

## DISCUSSION

■ One of appellant's arguments is that in enacting W. Va.Code § 24F–1–1 *et seq.,* the Legislature made an unconstitutional delegation of its authority. The thrust of this argument is that the Legislature may delegate its authority so long as the enabling legislation contains an express standard for the Commission (or other rule-making body) to follow. This Court has held that the Legislature must be careful in providing adequate guidance to a rule-making body when delegating any of its authority:

"As a general rule the Legislature, in delegating discretionary power to an administrative agency, such as a board or a commission, must prescribe adequate standards expressed in the statute or inherent in its subject matter and such standards must be sufficient to guide such agency in the exercise of the power conferred upon it." Syl. Pt. 3, *Quesenberry v. Estep,* 142 W.Va. 426, 95 S.E.2d 832 (1956).

Syl. pt. 4, *State ex rel. WV Citizens Action Group v. Economic Development Grant Committee,* 213 W.Va. 255, 580 S.E.2d 869 (2003).

■ Moreover, we agree with the appellants that the Legislature may not simply direct the Commission to "regulate grave markers" without any guidance. However, we believe that the statute does contain adequate guidance to the Commission. The statute first grants the Commission the au-

thority to regulate charges for veterans markers:

> (a) In addition to its other powers and duties, the public service commission may determine, establish and modify, in a manner that it considers appropriate, the fees and total charges imposed by cemeteries and companies that set and install memorial monument markers for the setting of United States department of veterans' affairs grave markers at the graves of deceased United States armed forces veterans.

W. Va.Code § 24F–1–2(a) (2003). Appellants claim that this is an impermissible grant of legislative authority. Were the statute to stop there, we would be inclined to agree. However, the statute goes on to give more specific directions:

> If the commission establishes fees and total charges as authorized by this section, it shall establish:
>
> (1) A maximum fee schedule to be designated "the regional permanent endowment care fund" which represents the costs to a cemetery for the perpetual care of the grave marker; and
>
> (2) A maximum fee schedule to be designated as "the regional installation fees" which represents the costs of installation of the veteran grave marker.
>
> Any fees established under this section shall consider regional market forces and may consider classes of veterans' markers or any other relevant conditions. The fees described in, this section, when added together, shall be designated as the "total charges" permitted for the installation of a veteran's affairs memorial marker. No other fees, charges or other costs may be assessed to the veteran's estate or family for the installation or maintenance of the veteran's grave marker.
>
> (b) Any fees and total charges established by the public service commission may only apply to the installation of memorial markers that are provided to the veteran without charge by the U.S. government upon application.

W. Va.Code § 24F–1–2 (2003).

■ Only the free markers for Veterans provided by the federal government are regulated by the statute. Thus the statute is quite narrow in scope. The Legislature specifically directed the Commission to consider market forces, and to apply its rate schedule only to the markers in question. As this Court has explained: " 'The delegation by the legislature of broad discretionary powers to an administrative body, accompanied by fitting standards for their exercise, is not of itself unconstitutional.' Point 8 Syllabus, *Chapman v. Huntington, West Virginia, Housing Authority,* 121 W.Va. 319 (3 S.E.2d 502) [1939]." Syl. pt. 5, *State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545 (1969). In light of the guidance and standards provided by the Legislature and considering the statute's limited reach, we believe that it passes constitutional muster.

■ Having said this, we do agree with the appellants that the Commission failed to follow proper procedures in creating the fee schedule at issue. As we noted above, the language used by the Commission in its notice of hearing suggested that affected parties would have more than one opportunity to provide testimony and evidence regarding the proposed rules:

> On July 9, 2003 the Commission will hold a hearing in this case for the purpose of hearing comments and proposals from interested persons as to the procedures to be adopted by the Commission, *if any,* pursuant to Senate Bill 494. These comments will be helpful to the Commission in determining its future course of action. *If* the Commission decides to issue proposed rules, there will be an additional public comment opportunity.

(Emphasis supplied). While the Commission might argue that the month long public comment period gave the affected parties an adequate opportunity to provide constructive criticism, we disagree. Though the Commission is correct in asserting that it had no legal requirement to conduct an additional hearing, the above language used by the Commission as well as comments made during the hearing suggested that there would be an additional hearing.

In addition, the one hearing conducted by the Commission had some obvious shortcomings. No testimony was taken under oath. The appellants did not have the opportunity to cross-examine those who spoke at the hearing. According to appellants, the Commission failed to consider the location of any specific cemetery, price fluctuations in materials, or the differences in labor costs between small and large cemeteries. These are all elements that may be beyond the control of the cemetery or installer, and should have been considered by the Commission.

Of greatest concern to this Court, it appears that the Commission failed to follow a specific dictate of the Legislature in drafting its proposed rules. The statute commands that: "Any fees established under this section shall consider regional market forces and may consider classes of veterans' markers or any other relevant conditions." W. Va.Code § 24F–1–2 (2003). This is an issue that cannot be ignored, and should be fully developed during the next hearing.

In summation, we believe that the statute is constitutional and fulfils a laudatory purpose of providing some certainty for grieving families in a difficult and vulnerable time in their lives. However, because we find fault with the procedures used by the Commission, we conclude that the Commission must hold an additional hearing.

IV.

CONCLUSION

Accordingly, we order the Commission to hold an additional hearing within 180 days. At that hearing, the Commission should consider relevant market forces, and any other considerations required by the statute. However, in the interests of predictability for the grieving families of deceased veterans, the current price schedule shall remain in effect until the Commission can hold the new hearing and issue new rules.

Affirmed in part, Reversed in part, and Remanded.